**MILAN EXPRESS COMPANY, INC.;**
**Nashville Country Express, Inc.,**
**Plaintiffs–Appellants,**

v.

**WESTERN SURETY COMPANY; Old Republic Surety Company; Lawyers Surety Corporation; Northwest National Insurance Company, Defendants–Appellees.**

No. 88–5960.

United States Court of Appeals, Sixth Circuit.

Argued April 11, 1989.

Decided Sept. 22, 1989.

William P. Sutherland, Watkins, McGugin, McNeilly & Rowan, Nashville, Tenn., Henry E. Seaton, III (argued), Washington, D.C., for plaintiffs-appellants.

Charles W. McElroy, Eugene N. Bulso, Jr. (argued), Boult, Cummings, Conners &

Berry, Nashville, Tenn., Lawrence V. Smart, Jr., Portland, Or., for defendants-appellees.

Herbert Liebman, Frankfort, Ky., Lawrence E. Lindeman, Alexandria, Va., Ad-Hoc Committee to end Broker Abuses (ACTEBA).

Before KEITH and KENNEDY, Circuit Judges; and MCQUADE,* District Judge.

KEITH, Circuit Judge.

Plaintiff motor carriers appeal from a district court order denying their motion for class certification and dismissing their freight-bonding action for lack of subject matter jurisdiction. Plaintiffs contend that their case arose under an act of Congress regulating commerce. 28 U.S.C. § 1337(a). As payment for transportation services provided to allegedly delinquent property brokers, plaintiff motor carriers seek the proceeds of surety bonds prescribed by the Interstate Commerce Commission (ICC), pursuant to federal statutes and regulations. 49 U.S.C. § 10927(b); 49 C.F.R. § 1043.4(b). Defendant surety companies argue that because the disputed bonds must be interpreted and enforced in accordance with state law, the district court properly concluded that there is no federal question. For the reasons that follow, we REVERSE.

## I.

### A.

In the interstate surface transportation industry, the ICC licenses property brokers: middlemen who arrange transportation services between motor carriers and shippers of various products. Surety companies post bonds on behalf of the brokers, who bill the shippers and pay the motor carriers they retain. Each bond carries a penalty limited to $10,000.00. In the case at bar, the brokers received payments from the shippers for freight, but allegedly failed to disperse payments to the plaintiff

motor carriers. Plaintiffs then sought to recover against the bonds posted on behalf of the brokers. Defendants denied plaintiffs' claims because the surety agreement's language discussed only the "protection of travelers and shippers," and did not name "motor carriers." *See* Broker's Surety Bond Under Section 211(c) of the Interstate Commerce Act, Form BMC–84 (Rev.1977).

To protect motor carriers and the shipping public, the ICC will issue a broker's license only if the applicant files a bond or other type of security approved by the ICC. 49 U.S.C. § 10927(b). If a bond is filed, the broker must use the ICC's prescribed Form BMC–84. *See* 49 C.F.R. § 1043.4(b). The original language of Form BMC–84 identified travelers and shippers, but not motor carriers, as the intended beneficiaries of the bonds. However, on April 9, 1987, the ICC defined the parameters of its insurance regulations, stating that it "has always interpreted the security offered by brokers to cover both shippers and motor carriers." *Clarification of Insurance Regulations,* 3 I.C.C.2d 689, 692 (1987). "As a matter of clarity," the ICC concluded, "we are modifying the language of the prescribed Broker Surety Bond, Form BMC–84 (Rev. 77), to specifically identify motor carriers as well as shippers as entities included within the intended statutory coverage." *Id. See also* Broker's Surety Bond Under 49 U.S.C. § 10927, Form BMC–84 (Rev.1987) [hereinafter Form BMC–84].

### B.

On September 16, 1987, plaintiffs brought this civil action pursuant to 28 U.S.C. § 2201, seeking a declaratory judgment that they are the obligees under the bonds upon which defendants stand as surety. The original complaint asserted jurisdiction on the basis of diversity of citizenship. After defendants filed a motion to dismiss plaintiffs' complaint on October

---

* The Honorable Richard B. McQuade, Jr., U.S. District Judge for the Northern District of Ohio, sitting by designation.

28, 1987, plaintiffs moved for leave to amend their complaint. The district court granted plaintiffs' motion on December 29, 1987. In the amended complaint, the plaintiffs asserted both diversity jurisdiction, pursuant to 28 U.S.C. § 1332, and subject matter jurisdiction, pursuant to 28 U.S.C. § 1337(a).

On January 6, 1988, the district court referred this action to a magistrate for a report and recommendation on the various motions. On January 19, 1988, defendants subsequently filed a motion to dismiss the amended complaint for lack of subject matter jurisdiction. Plaintiffs moved, on March 11, 1988, to have this action certified as a class action.

The magistrate's report and recommendation was filed on May 2, 1988, urging that defendants' motion to dismiss be granted, and that plaintiffs' motion for class certification be denied. On June 3, 1988, plaintiffs filed objections to the magistrate's report. After making a *de novo* determination on the record, the district court on August 1, 1988, issued an order that adopted the magistrate's report and recommendation; denied plaintiffs' motion for class certification; and dismissed plaintiffs' case.

■■■ Plaintiffs filed a timely notice of appeal on August 23, 1988. Although plaintiffs present several arguments on appeal, only one issue is properly before this court: whether the district court erred in dismissing plaintiffs' freight-bonding action for lack of subject matter jurisdiction, pursuant to 28 U.S.C. § 1337(a).[1]

## II.

### A.

The ICC, established by Congress in 1887, is "conventionally cited as the first of the modern administrative agencies." Fallon, *Of Legislative Courts, Administrative Agencies, and Article III*, 101 Harv.L.Rev. 915, 923 & n. 50 (1988). Decisions of the ICC and disputes involving the federal regulation of interstate commerce have historically been reviewed by the federal court. *See Peyton v. Railway Express Agency*, 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525 (1942); *Louisville & Nashville R.R. Co. v. Rice*, 247 U.S. 201, 38 S.Ct. 429, 62 L.Ed. 1071 (1918); Fallon, *supra*, at 923 & n. 50. By statute, Congress has established federal jurisdiction over such disputes:

> The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

28 U.S.C. § 1337(a).

To determine which civil actions fall within, and which civil actions fall outside, the subject matter jurisdiction of the district courts, this court has adopted a familiar definition of the statutory phrase "arising under." *Ford Motor Co. v. Transport*

---

1. On appeal, plaintiffs also argue that because their suit is brought "on a bond executed under [the] law[s] of the United States," the federal district court maintains original jurisdiction over their case. *See* 28 U.S.C. Section 1352. However, since plaintiffs failed to raise the Section 1352 issue in the district court, this court will not address the issue, for the first time, on appeal. *See, e.g., Sigmon Fuel Co. v. TVA*, 754 F.2d 162, 164–65 (6th Cir.1985) (explaining that courts of appeals generally refuse to consider issues not passed upon by district courts).

Plaintiffs next argue that this court should reverse the district court's denial of plaintiffs' motion for class certification. *See* Fed.R.Civ.P. 23(b)(3). We disagree. Because we reverse the judgment of the district court dismissing plaintiffs' case for lack of subject matter jurisdiction, there is no longer a final judgment to support our "review of interlocutory orders, even though such a judgment existed at the outset of the appeal." *Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 26 (9th Cir.1981) Thus, at this juncture, our reversal of the judgment below prevents us from reviewing the district courts' denial of class certification. *See* 28 U.S.C. Section 1291 ("The court of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States."); *Cotten v. Treasure Lake, Inc.*, 518 F.2d 770, 772 (6th Cir.1975) (stating that an order denying class certification is not a final decision within the meaning of 28 U.S.C. Section 1291), *cert. denied*, 423 U.S. 930, 96 S.Ct. 281, 46 L.Ed.2d 259 (1975). *See also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476–77, 98 S.Ct. 2454, 2462, 57 L.Ed.2d 351 (1978) (holding that because a district court's order denying class certification is not a final decision, such an order is not appealable as a matter of right).

*Indemnity Co.*, 795 F.2d 538 (6th Cir.1986), we explained that:

> "Arising under" for purposes of Section 1337(a) is interpreted similarly to the analogous "arising under" language in Section 1331, 28 U.S.C. § 1331. *See Peyton v. Railway Express Agency, Inc.*, 316 U.S. 350 [62 S.Ct. 1171, 86 L.Ed. 1525] (1942) (per curiam); *Michigan Savings & Loan League v. Francis*, 683 F.2d 957, 960 n. 6 (6th Cir.1982). An action will arise under a statute regulating commerce, therefore, if *a federal right created by the statute is essential to the cause of action. See, e.g., Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9 [, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420] (1983); *Gully v. First National Bank in Meridian*, 299 U.S. 109, 112 [, 57 S.Ct. 96, 97, 81 L.Ed. 70] (1936).

*Ford Motor Co.*, 795 F.2d at 543–44 (emphasis added).

An examination of the relevant federal statute is often sufficient to establish the existence or lack of subject matter jurisdiction. However, in some cases, an evaluation of additional sources and the circumstances surrounding the dispute may also be required. One leading commentator has suggested that the "federal law that will support federal question jurisdiction may be the Constitution, a statute of the United States, an administrative regulation, or a treaty." C. Wright, The Law of the Federal Courts 97 (4th ed.1983). Moreover, in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), the Supreme Court explained that jurisdictional legislation must be interpreted " 'in light of the history that produced it, the demands of reason and coherence, and the dictates of sound judicial policy.' " *Id.* at 810, 106 S.Ct. at 3233 (quoting *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 379, 79 S.Ct. 468, 484, 3 L.Ed.2d 368 (1959)).

## B.

In urging us to find federal jurisdiction in the case at bar, plaintiffs have directed our attention to the forms, rules, regulations, and administrative decisions of the ICC, as well as the Interstate Commerce Act ("the Act"). *See* 49 U.S.C. § 10101 *et seq.* Historically, the Act initiated the federal regulation of interstate commerce, offering access and protection to public users and commercial providers of interstate transportation. *See, e.g., Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 256, 85 S.Ct. 348, 357, 13 L.Ed.2d 258 (1964). To insure that property brokers meet their financial responsibilities to commercial providers in the surface transportation industry, Congress has conferred upon the ICC the power to grant, deny or revoke brokers' licenses. *See* 49 U.S.C. § 10927(b). Recently, the ICC emphasized that:

> The legislative history of [Section 10927(b) ] of the [A]ct clearly reveals that the primary purpose of Congress in regulating motor transportation brokers is *to protect [motor] carriers* and the traveling and shipping public against dishonest and financially unstable middlemen in the transportation industry.

*Clarification of Insurance Regulations*, 3 I.C.C.2d 689, 691 (1987) (emphasis added) (quoting *Carla Ticket Service, Inc., Broker Application*, 94 M.C.C. 579, 580 (1964)).

On appeal, plaintiff motor carriers contend that a substantial body of federal law—the forms, rules, regulations, and decisions of the ICC, in addition to the Act—establishes that they are entitled to collect past-due freight charges from the defendant surety companies who posted bonds on behalf of the delinquent brokers. *See Clarification of Insurance Regulations*, 3 I.C.C.2d 689, 691 (1987); 49 U.S.C. § 10927(b); 49 C.F.R. § 1043.4(b); Form BMC–84. *See also United States v. Braverman*, 373 U.S. 405, 408, 83 S.Ct. 1370, 1372, 10 L.Ed.2d 444 (1963) (dicta) (suggesting that pursuant to the Act, motor carriers have a federally mandated right and duty to collect their freight charges at established rates). Plaintiffs continue that because their right to collect on the bonds was created by federal law and is essential to their case, their cause of action "aris[es]

under an[ ] [a]ct of Congress regulating commerce" and thus, should be heard in a federal forum. *See* 28 U.S.C. § 1337(a). In response, defendants argue: first, that plaintiffs' claims should be heard in a state forum; second, that the bonds should be interpreted in accordance with state law; and third, that state law should govern the question of whether the plaintiffs are entitled to recover. However, because the bonds are created on federal forms, administered under federal regulations, and required by a federal statute, we find little merit in defendants' arguments. *See* 49 U.S.C. § 10927(b); 49 C.F.R. § 1043.4(b); Form BMC–84. The historical federal interest in the regulation of interstate commerce persuades us that plaintiffs' claims for recovery under the bonds, which are clearly creatures of federal law, should not be subjected to the peculiarities of interpretation in fifty different state forums. Rather, plaintiffs' claims should be heard in a federal forum that possesses substantial expertise in matters of interstate commerce. *See, e.g.,* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart and Wechsler's The Federal Courts and The Federal System 868 (2d ed.1973) (suggesting that the protection of Congressionally created or recognized interests is an essential purpose of extending the federal judicial power). Because the bonds are required, promulgated, and regulated by the ICC; because the bonds are intended to protect motor carriers who fall victim to broker abuse; and because the bonds allegedly guarantee payment of past-due freight charges sought by the plaintiffs, we are persuaded that federal jurisdiction should be exercised in this case.

Our finding of subject matter jurisdiction over plaintiffs' suit is firmly grounded in the Act, as well as the rules, regulations, and decisions of the ICC. In addition, our finding of federal jurisdiction over this case stands upon the firm foundation of *Ford Motor Co. v. Transport Indemnity Co.,* 795 F.2d 538 (6th Cir.1986).

In *Ford,* a motor carrier transported automobiles in interstate commerce for plaintiff Ford Motor Company. When automobiles were damaged in transport,

plaintiff shipper sought recovery from the motor carrier's insurer, defendant Transport Indemnity Company. *See Ford Motor Co.,* 795 F.2d at 540–41. Plaintiff sued under ICC prescribed Form BMC–32, an endorsement filed by the defendant insurer to guarantee the motor carrier's payment of cargo losses. *See id.* at 544; 49 U.S.C. § 10927(a)(3); 49 C.F.R. § 1043.1(b). Finding subject matter jurisdiction over plaintiffs' case in *Ford,* we held that:

> Since Section 10927(a)(3) as part of the Interstate Commerce Act is clearly an "[a]ct of Congress regulating commerce" and since [plaintiff shipper] is suing [defendant insurer] based on the [BMC–32] endorsement, this case "arises under" an act of Congress regulating commerce.

*Ford Motor Co.,* 795 F.2d at 544 (quoting 49 U.S.C. § 1337(a)).

Because the *Ford* plaintiffs and the present plaintiffs both sued on parallel provisions of federal law, our holding in *Ford* governs our finding of federal jurisdiction in the present case. First, both cases involved the posting of an insurance policy or a surety bond required by the Act to effectuate the federal regulation of interstate commerce. Second, 49 U.S.C. § 10927(a)(3), which mandates insurance or surety arrangements for motor carriers in *Ford,* is a parallel provision to 49 U.S.C. § 10927(b), which mandates insurance or surety arrangements for property brokers in the present case. *Compare* 49 U.S.C. § 10927(a)(3) *with* 49 U.S.C. § 10927(b). Third, the ICC prescribed insurance endorsement form at issue in *Ford,* BMC–32, cannot easily be distinguished from the ICC prescribed surety bond form at issue in the present case, BMC–84. In both cases, the plaintiffs sued, in part, upon forms required, promulgated, and regulated by the ICC. *Compare* Form BMC–32 (quoted in *Ford Motor Co.,* 795 F.2d at 540) *with* Form BMC–84 (quoted in *Clarification of Insurance Regulations,* 3 I.C.C.2d at 694). Fourth, the ICC regulations define the rights and responsibilities of both the defendant insurer in *Ford* and the defendant surety companies in the present case. *See* 49 C.F.R. § 1043. Thus, applying *Ford*

as controlling precedent to the case at bar, we note that the relevant forms, rules, regulations, and decisions of the ICC, in addition to the Act, constitute a substantial body of law regulating interstate commerce. *See Clarification of Insurance Regulations*, 3 I.C.C.2d 689, 691 (1987); 49 U.S.C. § 10927(b); 49 C.F.R. § 1043.4(b); Form BMC–84. Because these federal laws determine the content of the transactions in the surface transportation industry and because plaintiff motor carriers are suing defendant surety companies upon these federal laws, this case "aris[es] under an[ ] [a]ct of Congress regulating commerce." 28 U.S.C. § 1337(a). *See also Ford Motor Co.*, 795 F.2d at 544; C. Wright, *supra*, at 97. *Cf. Thurston Motor Lines, Inc. v. Jordan K. Rand, LTD.*, 460 U.S. 533, 534–35, 103 S.Ct. 1343, 1343–44, 75 L.Ed.2d 260 (1983) (finding federal jurisdiction, where Congress, acting through the ICC, prescribed the language of a disputed bill of lading to which shippers and motor carriers were bound).

Defendants argue that our finding of subject matter jurisdiction in this case will circumvent the Supreme Court's recent decision in *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).[2] We disagree. In *Merrell Dow*, plaintiffs filed a complaint against the defendant manufacturer and distributor of the drug Bendectin, alleging that the drug caused birth defects in the children of mothers administered the drug during pregnancy. Plaintiffs sued on common law theories of negligence and attempted to use defendant's alleged violation of the Federal Food, Drug and Cosmetic Act ("FDCA"), not as a basis of recovery, but as evidence of negligence or culpability. *See Merrell Dow*, 478 U.S. at 805–06, 106 S.Ct. at 3231; 21 U.S.C. § 301 *et seq.* Declining to find federal jurisdiction, the Court held that plaintiffs failed to state a claim arising under the laws of the United States. *See id.* at 817, 106 S.Ct. at 3236 (quoting 28 U.S.C. § 1331).

*Merrell Dow* can be distinguished from the present case on several grounds. First, this court declined to find federal jurisdiction in *Merrell Dow* because plaintiffs failed to prove that their relief *depended necessarily* on a substantial question of federal law. Thus, the jury could have easily found the defendant to be negligent, but not in violation of the FDCA. *See Thompson v. Merrell Dow*, 766 F.2d 1005, 1006 (6th Cir.1985), *aff'd*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). By contrast, the present plaintiffs have relied exclusively on federal law in their suit to recover on bonds required, promulgated, and regulated by the ICC. Second, the *Merrell Dow* plaintiffs did "not allege that federal law create[d] any of the causes of action that they ... asserted." *Merrell Dow*, 478 U.S. at 809, 106 S.Ct. at 3233.

---

2. Defendants also urge us to follow *Merrell Dow's* progeny, *Millers National Insurance Co. v. Axel's Express, Inc.*, 851 F.2d 267 (9th Cir.1988). In *Millers National*, plaintiff insurer of an equipment company brought an action against defendant insurer of a motor carrier to recover under an indemnity clause in the lease of a damaged truck. Plaintiff insurer settled and compromised the claim of a third party victim, and then attempted to sue defendant insurer for contribution. Because the defendant's insured was a motor carrier required to purchase insurance by 49 U.S.C. Section 10927(a)(1), plaintiff sued the defendant in federal court. *Millers National*, 851 F.2d at 268–69. The Ninth Circuit held, however, that the plaintiff's "claim for indemnity is a state law claim. Though its resolution may involve a determination of federal law, that alone is not sufficient to involve federal question jurisdiction." *Id.* at 269. We decline to follow *Millers National* for several reasons. First, unlike the alleged federal question in *Millers National*, the federal question in the present case is not ancillary. Second, the *Millers National* plaintiff requested that the court determine whether or not the defendant was liable for the damaged truck. The present plaintiffs, however, request that the court determine whether or not they are entitled to recover on bonds created by federal law. Third, in contrast to *Millers National*, the underlying substantive issue in the present case is not a state law question, but a federal law question: whether or not the ICC prescribed bonds cover travelers, shippers and motor carriers? Finally, we question the wisdom of the Ninth Circuit's unreserved application of *Merrell Dow*, an opinion exclusively interpreting a negligence claim brought under the Federal Food, Drug, and Cosmetic Act, to *Millers National*, a case requiring the interpretation of both liability issues and insurance coverage issues pursuant to the Interstate Commerce Act.

The *Merrell Dow* plaintiffs merely asserted that the defendant's violation of the FDCA constituted proof of negligence. *See id.* at 809–11, 106 S.Ct. at 3232–34. The present plaintiffs, however, argue that their rights to the proceeds of the surety bonds were created by federal law and should be enforced in a federal forum. Third, in *Merrell Dow,* no specific and compelling federal interest was demonstrated. In contrast, our finding of subject matter jurisdiction in the present case is entirely consistent with the specific federal interest in the protection of motor carriers and the historical federal interest in the regulation of interstate commerce.[3]

Accordingly, the judgment of the district court is REVERSED and REMANDED for further proceedings consistent with this opinion.

MCQUADE, District Judge, dissenting.

The plaintiffs filed this case in federal court seeking a declaratory judgment that they are entitled to recover as obligees under surety bonds upon which the defendants stand as sureties.[1] The plaintiffs' cause of action is essentially an action on a surety bond, an action which has its genesis in state law, not federal law. Because federal law does not create the plaintiffs' cause of action, and because a right created by federal law is not essential to the plaintiffs' cause of action, I conclude that the district court correctly dismissed this suit for lack of jurisdiction. Therefore, I respectfully dissent.

The majority concludes that federal jurisdiction in this case is properly premised on 28 U.S.C. § 1337(a), which provides, in part: "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce...." In construing the meaning of "arising under," the Supreme Court has not distinguished between § 1337(a) and 28 U.S.C. § 1331 (general federal-question jurisdiction). *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 8 n. 7, 103 S.Ct. 2841, 2845 n. 7, 77 L.Ed.2d 420 (1983). It is

---

**3.** The dissent suggests that we have taken an unjustifiably broad view of the underlying purpose of 42 U.S.C. § 10927(b), and that we have relied upon the historical federal interest in the regulation of interstate commerce to find subject matter jurisdiction in this case. *See* Dissenting Opinion at 792. We are mindful of the dangers of building upon an overbroad, vague or unsettled foundation. Our finding of subject matter jurisdiction in the present case, however, stands upon the specific and firm foundation of the Act, as well as the forms, rules, regulations, and decisions of the ICC. *See Clarification of Insurance Regulations,* 3 I.C.C.2d 689, 691 (1987); 49 U.S.C. § 10927(b); 49 C.F.R. § 1043.4(b); Form BMC–84.

Our disagreement results primarily from the dissent's conclusion that the Act, as well as the forms, rules, regulations and decisions of the ICC, does not provide the plaintiffs with any rights beyond the express terms of the bonds. In contrast, we have taken notice of plaintiff motor carriers' contention that a substantial body of federal law establishes that they are entitled to collect past-due freight charges from the defendant surety companies who posted the bonds. We have not, however, addressed the substance of plaintiffs' claim to such a federally created right. Instead, we have remanded this case so that the district court may enter a judgment upon the merits.

The dissent also questions whether our decision in the present case can be reconciled with the result reached in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In *Cort,* the Supreme Court did not suggest that the federal courts are without jurisdiction to determine whether there is an implied cause of action under a federal statute. Indeed, the Court decided that issue. *See Cort,* 422 U.S. at 84–85, 95 S.Ct. at 2091 (holding that a private cause of action for damages against corporate directors may not be implied under 18 U.S.C. § 610, a statute prohibiting corporate contributions to certain federal elections).

When the present case is heard on remand, the plaintiff motor carriers may not succeed. The Act, as well as the forms, rules, regulations and decisions of the ICC, may not provide the plaintiffs with the federally created right they assert. We have concluded, however, that the federal courts should make that decision because it is a question of federal law.

**1.** It is well settled that the Declaratory Judgment Act, 28 U.S.C. § 2201, "enlarged the range of remedies available in the federal courts, but did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1949); *see also Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937) ("[T]he operation of the Declaratory Judgment Act is procedural only.").

proper, therefore, to apply the principles of general federal-question jurisdiction to determine whether this suit arises under an act of Congress regulating commerce.

The paradigm of cases coming within "arising under" jurisdiction is one covered by Justice Holmes' statement that a "suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). Most cases that arise under federal law are those in which federal law creates the cause of action. The majority opinion concedes that the plaintiffs' suit is not such a case.

Federal jurisdiction may nonetheless be found in a suit where state law creates the cause of action "if a well-pleaded complaint establishe[s] that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. at 2848; *see also Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921); *Ford Motor Co. v. Transport Indem. Co.*, 795 F.2d 538, 543–44 (6th Cir. 1986)("An action will arise under a statute regulating commerce ... if a federal right created by the statute is essential to the cause of action."). This is not to say, however, that the presence of a federal issue in a state-created cause of action is sufficient to confer federal jurisdiction over the suit. "[D]eterminations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 810, 106 S.Ct. 3229, 3233, 92 L.Ed.2d 650 (1986); *see also Textile Workers v. Lincoln Mills*, 353 U.S. 448, 470, 77 S.Ct. 912, 928, 1 L.Ed.2d 972 (1957) (Frankfurter, J., dissenting) (proper inquiry is "the degree to which federal law [is] ... in the forefront of the case and not collateral, peripheral or remote"); *Gully v. First Natl Bank*, 299 U.S. 109, 117–18, 57 S.Ct. 96, 99–100, 81 L.Ed. 70 (1936) ("What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treat-ment of problems of causation[,] ... a selective process which picks the substantial causes out of the web and lays the other ones aside.").

In *Franchise Tax Board*, for example, the Supreme Court held that

a suit by state tax authorities both to enforce its levies against funds held in trust pursuant to an ERISA-covered employee benefit plan, and to declare the validity of the levies notwithstanding ERISA, is neither a creature of ERISA itself nor a suit of which the federal courts will take jurisdiction because it turns on a question of federal law.

463 U.S. at 28, 103 S.Ct. at 2856. The Court reasoned that despite the presence of a substantial issue of federal law (whether ERISA prevented the state's levying a tax on funds held in trust pursuant to an employee benefit plan), the state's suit was not created by federal law: ERISA does not provide anyone other than participants, beneficiaries or fiduciaries with an express cause of action for a declaratory judgment on the issues in the case. A suit for similar relief by some other party, namely the state of California, does not arise under that provision of ERISA.

The majority opinion finds that the district court should exercise jurisdiction in this case because resolution of the plaintiffs' claim involves the application of a federal statute and related regulations. In reaching this conclusion, the court relies on the Interstate Commerce Act, 49 U.S.C. § 10101 *et seq.* ["the Act"], the forms, rules, regulations and decisions of the Interstate Commerce Commission ["ICC"], and the decision of this court in *Ford Motor Co. v. Transport Indem. Co.*, 795 F.2d 538 (6th Cir.1986). None of these factors, alone or in tandem, is sufficient to support the majority's conclusion.

The Act, at 49 U.S.C. § 10927(b), provides:

The [Interstate Commerce] Commission may issue a broker's license to a person under section 10924 of this title only if the person files with the Commission a bond, insurance policy, or other type of security approved by the Commission to

ensure that the transportation for which a broker arranges is provided. The license remains in effect only as long as the broker complies with this subsection. The ICC has promulgated a single regulation pursuant to the Act concerning the "bond, insurance policy, or other type of security" prescribed by § 10927(b):

> Evidence of a surety bond must be filed using the Commission's prescribed Form BMC–84. Other security may be evidenced by the filing of an agreement with a financial institution, licensed or qualified to do business in a state or the District of Columbia, establishing a trust fund in the amount of $10,000. The surety bond or the trust fund shall ensure the financial responsibility of the broker by providing for payment to shippers or motor carriers if the broker fails to carry out its contracts, agreements, or arrangements for the supplying of transportation by authorized motor carriers.

49 C.F.R. § 1043.4(b).

I do not dispute that the posting of a bond using form BMC–84 is required by the statute and ICC regulation. Furthermore, resolution of the plaintiffs' claims will involve the application of the federal statute and regulation. Neither of these factors, however, is sufficient to confer federal jurisdiction. What is lacking is clear congressional intent to create a federal cause of action on the surety bond. *See Jackson Transit Auth. v. Local Division 1285, Amalgamated Transit Union,* 457 U.S. 15, 22, 102 S.Ct. 2202, 2206–07, 72 L.Ed.2d 639 (1982) ("Whenever we determine the scope of rights and remedies under a federal statute, the critical factor is the congressional intent behind the particular provision at issue.").

In *Merrell Dow,* 478 U.S. at 810–12, 106 S.Ct. at 3233–34, the Supreme Court reviewed a claim of federal-question jurisdiction in light of the framework enunciated in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), for evaluating whether a federal cause of action should be implied from a federal statute. The *Cort* framework consists of four factors that are relevant to the inquiry into whether a federal cause of action should be implied: (1) Is the plaintiff a member of the class for whose special benefit the statute was passed? (2) Is there any indication of legislative intent to provide or deny such a cause of action? (3) Would a federal cause of action further the underlying purposes of the legislative scheme? and (4) Is the cause of action one traditionally relegated to state law? While continuing to cite the four-factor analysis of *Cort, see Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988), the Supreme Court has emphasized the second factor (congressional intent) as the determinative factor. *See id.* 108 S.Ct. at 521 (Scalia, J., concurring in the judgment); *Jackson Transit Auth.,* 457 U.S. at 22–23, 102 S.Ct. at 2206–07; *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979).

The Court stated in *Merrell Dow* that an assumption that there is no federal cause of action is significant in determining whether a cause of action arises under federal law. "[I]t would ... flout, or at least undermine, congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction" where Congress has not provided a federal cause of action under the federal statute. *Merrell Dow,* 478 U.S. at 812, 106 S.Ct. at 3234.

Applying the four factors of *Cort* to this case reveals that a federal cause of action could not be implied under § 10927(b). As emphasized by the Supreme Court, the most important question is whether Congress intended to create a federal remedy. The plain language of the statute does not evince such an intent. This section addresses a requirement for licensing of brokers by the ICC. One would be hard pressed to maintain that such a licensing requirement is evidence of Congress' intent to provide motor carriers with a federal cause of action to recover delinquent shipping charges. There is a similar paucity of evidence in the legislative history of congressional intent to create a federal remedy under § 10927(b). Two of the remaining three *Cort* factors buttress the conclu-

sion that Congress did not intend to create a federal remedy in § 10927(b). First, common carriers, such as the plaintiff, are not members of a class for whose special benefit the statute was passed. Second, the construction of surety contracts is an area of law traditionally relegated to state law.

The only *Cort* factor that might weigh in favor of finding a federal remedy in this case is whether such a remedy would further the underlying purpose of the legislative scheme. The underlying purpose of § 10927(b) is "to ensure that the transportation for which a broker arranges is provided." 49 U.S.C. § 10927(b). The majority takes a decidedly broader view of the scope of the underlying purpose of § 10927(b), relying on "[t]he historical federal interest in the regulation of interstate commerce," Majority Opinion at 787, to support the finding of federal jurisdiction in this case. A narrower view of the underlying statutory purpose, however, one that focuses on the specific purpose of § 10927(b), is justified. In *Franchise Tax Board*, the Supreme Court declined to find federal jurisdiction where the underlying purposes of ERISA were implicated by the plaintiff's cause of action. Despite the broad scope and importance of the underlying purposes of ERISA, the Court focused on the narrower provision of ERISA that provides for suits by participants, beneficiaries and fiduciaries, to determine whether the plaintiff's cause of action arose under the statute. In so doing, the Court avoided the error of finding a federal interest at stake in every ERISA-related case. Our inquiry into underlying statutory purpose should be similarly narrowly focused.

The underlying purpose of § 10927(b) will not be compromised if we fail to find federal jurisdiction in this case. If a broker fails to arrange the transportation, or, as in this case, fails to pay a carrier who has provided the transportation, the shipper may bring an action in state court to recover damages for the broker's failure to provide transportation, or the carrier may bring an action in state court to recover its unpaid fee. In either case, such plaintiffs will rely on the relevant language of the surety bond, the statute that prescribes its posting and the pertinent ICC regulation. I do not share the majority's concern that to decline to find federal jurisdiction in this case would lead to fifty different determinations of rights and liabilities under the bonds in question. First, all of the bonds contain identical language because the form is prescribed by the ICC. Second, the protections allegedly afforded by federal regulation will be applied by the state courts. Even if instances of local protectionism defeat an otherwise valid construction of the bonds, the plaintiffs have recourse to state appellate courts and, if necessary, review by the United States Supreme Court. I accept for the sake of argument that Congress intended to protect shippers and motor carriers from the vicissitudes of contracting with property brokers. But that is not what matters in this case; the relevant question is whether Congress intended to create for motor carriers a federal cause of action to recover as obligees under surety bonds prescribed by § 10927(b). The answer to that question is, in my opinion, no.

Absent a clear statement of congressional intent, it would be improper to conclude that Congress meant to federalize the law of surety bonds related to the shipment of goods in interstate commerce. Congress has adequately provided, through the forms and regulation promulgated by the ICC, for the protection of shippers and motor carriers who fall prey to financially unstable property brokers. The benefit of federal protection may be asserted in state court. It is not necessary to further the statutory policy to find an implied federal cause of action based on the surety bonds or to find that the plaintiffs' cause of action "arises under" an act of Congress regulating commerce: the plaintiffs may file suit in state court without losing the benefit of federal regulation designed to protect shippers and motor carriers.

The majority believes that the finding of federal jurisdiction in *Ford Motor Co. v. Transport Indem. Co.*, 795 F.2d 538 (6th Cir.1986), controls the outcome of this case, but *Ford* is distinguishable. The statute at issue in *Ford*, § 10927(a)(3), states:

The Commission may require a motor common carrier providing transportation under a certificate to file with the Commission a type of security sufficient *to pay a shipper or consignee for damage to property of the shipper or consignee* placed in the possession of the motor common carrier as the result of transportation provided under this subtitle.

49 U.S.C. § 10927(a)(3) (emphasis added). The language "to pay a shipper or consignee for damage to property of the shipper or consignee" is the language that creates for shippers a federal right to recover under the security required by the statute. There is no similar language in § 10927(b). One might argue that this reflects congressional oversight rather than congressional intent. That argument, however, ignores the clear import of cases such as *Cort v. Ash, Franchise Tax Board,* and *Merrell Dow,* where the Supreme Court has declined to find implied federal causes of action absent express congressional intent.

> By enforcing contract rights not within the jurisdictional grant conferred by Congress, as much as by improperly "inferring" a right of action, "a court of limited jurisdiction necessarily extends its authority to embrace a dispute Congress has not assigned it to resolve.... This runs contrary to the established principle that '[t]he jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation ...,' and conflicts with the authority of Congress under Art. III to set the limits of federal jurisdiction."

*Jackson Transit Auth.,* 457 U.S. at 30, 102 S.Ct. at 2211 (Powell, J., concurring) (citations omitted).

The majority opinion states that "the ICC regulations define the rights and responsibilities of both the defendant insurer in *Ford* and the defendant surety companies in the present case." Majority Opinion at 787–788. A comparison of the regulations, however, reveals that the rights and responsibilities of the parties under the surety bond at issue in this case are not set forth in the regulations. The single regulation governing the surety bond merely

states that the bond shall provide "for payments to shippers or motor carriers if the broker fails to carry out its contracts, agreements, or arrangements for the supplying of transportation by authorized motor carriers." 49 C.F.R. 1043.4(b). In contrast, the regulations governing the insurance policy that was at issue in *Ford* are extensive. The regulations dictate the method and timing of filing of claims, *id.* § 1005.2(a), minimum filing requirements, *id.* § 1005.2(b), acknowledgment of claims, *id.* § 1005.3, investigation of claims, *id.* § 1005.4, disposition of claims, *id.* § 1005.5, processing of salvage, *id.* § 1005.6, and the use of weight as a measure of loss, *id.* § 1005.7.

In *Ford,* therefore, resolution of the plaintiffs' claim required the court to construe federal regulations governing the content of the insurance policy and the rights and responsibilities of the parties thereunder. In order to establish its entitlement to recover under the insurance policy, Ford relied on a showing of its own and the insured carrier's compliance with federal regulations to create a *prima facie* case of liability against the insurance company. There are no similar requirements in the relevant regulation governing the rights and responsibilities of the parties or the content of the surety bond at issue in this case. The plaintiffs could not make a *prima facie* case against the sureties because the regulations do not set forth the responsibilities of the parties as to recovery on the surety bonds.

The Ninth Circuit recently decided that a case between two insurance companies for coverage of an accident involving a motor carrier did not arise under federal law simply because the truck involved in the accident was regulated under the Interstate Commerce Act. *Millers Nat'l Ins. Co. v. Axel's Express, Inc.,* 851 F.2d 267 (9th Cir. 1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1123, 103 L.Ed.2d 185 (1989). Relying on *Merrell Dow,* the court held that the plaintiff's claim was essentially a state law claim for indemnity, and the application of federal regulations did not convert that claim into a federal claim. The majority opinion's reasons for not following *Millers*

*National* are not persuasive. Majority Opinion at 788 n. 2. First, the majority states, but does not explain, that the federal claim in *Millers National* was "ancillary, contingent or collateral." *Id.* I would say, however, that the federal claim in this case is identical to that of the plaintiff's in *Millers National:* in both cases, the plaintiffs base federal jurisdiction on the presence of forms required by federal statutes and regulations. If Millers National Insurance Company's federal claim was ancillary to its state law claim, so is the plaintiffs' in this case. Second, the question presented by the plaintiff in *Millers National* (whether federal law determines liability) is identical to the question presented by plaintiffs in this case (whether federal law determines who may recover on the surety bonds). Third, the underlying substantive issue in this case is indeed a question of state law: whether a surety bond covers motor carriers as obligees. Fourth, I do not see the grounds or wisdom of restricting *Merrell Dow* to actions raising claims under the Federal Food, Drug and Cosmetic Act. *Merrell Dow* is part of a line of cases affirming the bedrock principle of our federal system that federal courts are courts of limited jurisdiction. In cases restricting the implication of federal causes of action, *e.g., Transamerica Mortgage Advisors, Inc.*, 444 U.S. at 15–16, 100 S.Ct. at 245, and in cases declining to find federal question jurisdiction unless Congress has clearly intended to extend such jurisdiction, *e.g., Franchise Tax Bd.*, 463 U.S. at 28, 103 S.Ct. at 2856, the Supreme Court has refused to chip away at that principle.

This court in *Ford* stated that a suit arises under an act of Congress regulating commerce "if a federal right *created by the statute* is essential to the cause of action." 795 F.2d at 543–44 (emphasis added). The right created by § 10927(b) is the right of the ICC to revoke a broker's license for failure to file the required surety bond, insurance policy or other security. The statute does not create, either expressly or impliedly, a federal right of motor carriers to recover as obligees under the surety bonds. The plaintiffs' suit was correctly dismissed for lack of jurisdiction.

In re Joseph A. VAUSE and Virgie L. Vause, Debtors.