**ORE–IDA FOODS, INC., Plaintiff,**

v.

**RICHMOND TRANSPORTATION SERVICES, INC., Bradley Transportation, Inc., Zurich Insurance Company, Hartford Fire Insurance Company, Defendants.**

**No. 90 C 3924.**

United States District Court, N.D. Illinois, E.D.

Feb. 4, 1992.

William Allen Kummerer, Schwartz & Freeman, Steven C. Weiss, Martin, Craig, Chester & Sonnenschein, Chicago, Ill., for plaintiff.

Carl N. Graf, Jr., Teresa Hoffman Liston, Carl N. Graf, Jr. & Associates, Morton Grove, Ill., for defendants Bradley Transp., Inc. and Richmond Transp. Services, Inc.

Thomas J. Finn, Crystal, Heytow, Alfieri & Warnick, Chicago, Ill., for Zurich Ins. Co.

Richard Dennis Heytow, Chicago, Ill., for Hartford Fire Ins.

## ORDER

NORGLE, District Judge.

Before the court are the motions to dismiss Ore–Ida Foods, Incorporated's amended complaint presented by Hartford Fire Insurance Company and Zurich Insurance Company. For reasons that follow, the court grants both motions.

## FACTS

Ore–Ida Foods, Incorporated ("Ore–Ida") contracted with two common carriers, Bradley Transportation, Incorporated ("Bradley") and Richmond Transportation Services, Incorporated ("Richmond"), for a June 22, 1989 shipment of potatoes and dozens of other items to New Jersey from Ore–Ida facilities in Wisconsin. The goods were picked up but were damaged in transit.

Prior to transporting these goods, Bradley obtained insurance with Zurich Insurance Company ("Zurich"). In accord with the strictures of 49 C.F.R. § 1043.1, Zurich filed a Motor Carrier Cargo Liability Certificate of Insurance, also known as a form B.M.C. 34 (hereinafter referred to as a "B.M.C. 34"). In the B.M.C. 34 Zurich certified that it issued a B.M.C. 32 in accord with 49 C.F.R. § 1043.2 (hereinafter referred to as a "B.M.C. 32"). Presumably, Hartford Insurance Company ("Hartford") filed the same forms when it insured Richmond.

The terms of the B.M.C. 32 and B.M.C. 34 endorsements are critical here. Zurich's B.M.C. 34 endorsement provides that Zurich "has issued ... a policy of cargo insurance which, by the attachment of endorsement, form number B.M.C. 32 ... has or have been amended to provide compensation for loss of or damage to all property belonging to shippers or consignees and coming into possession of the insured [shipper]...." The B.M.C. 32 endorsement states that Zurich "agrees to pay ... any shipper or consignee for all loss or damage to all property belonging to such shipper or consignee ... for which loss the insured may be held legally liable...."

Ore–Ida sued in federal court seeking to recover monies for the damaged goods. Jurisdiction, Ore–Ida alleged, was based on a federal question, 28 U.S.C. 1337. Specifically, Ore–Ida claimed that 49 U.S.C. §§ 10101 *et seq.* (the Revised Interstate Commerce Act) governed this case and that the controversies arising under this Act were sufficient to confer subject matter jurisdiction for federal question purposes.

The amended complaint named Richmond, Bradley, Zurich, and Hartford as defendants. Ore–Ida's theory against Richmond and Bradley was simple—the goods were not delivered to the New Jersey site in the condition in which they were released to Bradley and thus the common carriers were responsible for the loss. Against Zurich and Hartford, Ore–Ida alleged that these companies insured Richmond and/or Bradley and that the B.M.C. 32 and B.M.C. 34 created a right to proceed directly against Zurich and Hartford. Both insurers have moved to dismiss. Zurich moved to dismiss claiming the case amounted to a direct action against an insurer prohibited by Illinois law. Hartford moved to dismiss on the independent ground that there is no subject matter jurisdiction in this court.

## DISCUSSION

On a motion to dismiss, all well-pleaded factual allegations are taken as true. *Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991). All reasonable inferences to be drawn from those allegations are also accepted as true. *Meriwether v. Faulkner,*

821 F.2d 408, 410 (7th Cir.), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). Dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is not proper unless it appears certain that Ore–Ida cannot prove sufficient facts upon which jurisdiction could be determined. *See* Fed.R.Civ.P. 12(b)(1).

## I.

██ Hartford has moved to dismiss Ore–Ida's amended complaint asserting that this case presents no valid federal question. The federal question statute, 28 U.S.C. § 1331,[1] provides "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The court is therefore presented with two questions for resolution: what law or laws has Ore–Ida asserted confer jurisdiction, and does this legal basis comport with the § 1331 definition of "arising under"? The first question is simply answered. Ore–Ida points to 49 U.S.C. § 10927 and 49 C.F.R. §§ 1043.1, 1043.2 as conferring jurisdiction on this court. The issue of whether these laws are sufficient to confer jurisdiction on this court as a federal question is more problematic.

██ Whether a claim arises under federal law must be determined by reference to the well-pleaded complaint. *Oklahoma Tax Comm'n v. Graham,* 489 U.S. 838, 840, 109 S.Ct. 1519, 1520–21, 103 L.Ed.2d 924 (1989). "Arising under" has no uniform definition.

This much, however, is clear. The "vast majority" of cases that come within this grant of jurisdiction are covered by Justice Holmes' statement that a " 'suit arises under the law that creates the cause of action.' " Thus, the vast majority of cases brought under the federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action.

*Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986) (citation omitted) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9–10, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983) (quoting *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916))). This is the type of action Ore–Ida claims is present here.

Ore–Ida's amended complaint asserts this "cause of action arises under the Revised Interstate Commerce Act, Title 49 U.S.C. Section 10101 *et seq.,* and more specifically Section 10927(a)(3)." In its reply to Hartford's motion, Ore–Ida also directs the court's attention to 49 C.F.R. §§ 1043.1, 1043.2.

Beginning with § 10927(a)(3), that section provides:

The [Interstate Commerce] Commission may require a motor carrier providing transportation under a certificate to file with the Commission a type of security sufficient to pay a shipper or consignee for damage to property of the shipper or consignee placed in the possession of the motor common carrier as the result of transportation provided under this subtitle. A carrier required by law to pay a shipper or consignee for loss, damage, or default for which a connecting motor common carrier is responsible is subrogated, to the extent of the amount paid, to the rights of the shipper or consignee under any such security.

Even a cursory reading of this section does not support Ore–Ida's contention that this section supports a federal claim. Section 10927(a)(3) states only that the Interstate Commerce Commission ("ICC") may require a carrier to obtain insurance. It creates no rights, duties, or obligations. Rather, it gives the ICC the ability to require, if it so chooses, a motor common

---

1. Actually, Article III, § 2 is the original grant of power to the federal courts, which is more limited than the current statute. *Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir.1988). However, Article III's "arising under" power is not self-executing. Therefore, to establish federal-question jurisdiction in the federal courts an Act of Congress was required and was promulgated in 1875. *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 807 n. 3, 4, 106 S.Ct. 3229, 3231–32, n. 3, 4, 92 L.Ed.2d 650 (1986).

carrier to obtain certain security. No federal cause of action was intended to be created.

What Ore–Ida seeks is damages for its mangled goods. This may be a proper state action based on the contract between all the parties. However, the mere fact that the ICC mandates that some terms be included in that contract does not make the case a federal question "arising under" that law. The suit is instead a state law case based on the terms of that agreement. The concern with federal law is negligible at best. Ore–Ida's claim that the ICC required terms or even approved of the contract does not alter this conclusion. *Peoria & P. U. Ry. Co. v. Chicago & N.W. Transp. Co.*, 446 F.Supp. 1115, 1117 (S.D.Ill.1978) (mere approval of terms by ICC insufficient to create jurisdiction) (following *Chicago & N.W. Ry. v. Toledo, P. & W. Ry.*, 324 F.2d 936 (7th Cir.1963).

Ore–Ida's interpretation misunderstands the purpose of its own cause of action. Ore–Ida does not sue Hartford for *violation* of § 10927(a)(3). It actually sues Hartford for *complying* with the statute. Even assuming Ore–Ida could properly sue Hartford for violation of this statute, its seeking to sue Hartford for compliance further supports the conclusion that the case has no footing in this federal statute.

The court's conclusion that this section does not create a federal cause of action is supported by yet another reason: there is no legislative history to support such a conclusion. There are no committee comments of note on the section. Not even the legislative history of the law supports such an interpretation.

■ Furthermore, judicial prudence weighs against a finding of federal-question jurisdiction. If this section were construed to create a federal cause of action, Ore–Ida's reading, every accident involving a common carrier could end up in the federal courts. This construction would vastly enlarge the federal court's jurisdiction. The judiciary should avoid creating an additional jurisdictional basis when Congress has not indicated an intent to create one for to do so would abandon the court's traditional adjudicative role. Here, such a tremendous expansion of federal-question jurisdiction, in an age where access to federal courts is becoming more limited, is wholly unrealistic. This court concludes, that this case does not "arise under" the laws of the United States. *See Merrell Dow*, 478 U.S. at 817, 106 S.Ct. at 3236–37; *accord Clark v. Velsicol Chem. Corp.*, 944 F.2d 196, 199 (4th Cir.1991) ("Plaintiffs cannot by artful pleading transform their state negligence action into a substantial federal question.").

Ore–Ida's cases to the contrary are not on point. *Ford Motor Co. v. Transport Indem. Co.*, 795 F.2d 538 (6th Cir.1986), was never presented with the issue presently before this court. "[Transportation Indemnity] does not take issue with this 'arising under' analysis, but rather argues that finding jurisdiction in this manner would circumvent a recent Congressional limitation placed upon actions brought under the 'Carmack Amendment,' 49 U.S.C. § 11707 (1982)." *Ford Motor Co.*, 795 F.2d at 544. The court rejected that argument. *Id.* at 545.

*Milan Express Co. v. Western Sur. Co.*, 886 F.2d 783 (6th Cir.1989), held that a motor carrier was entitled to recover from the surety companies of delinquent brokers under § 10927(b). *Id.* at 786–87. That is precisely what this case is not.[2]

■ Turning to Ore–Ida's second basis for jurisdiction, Ore–Ida claims this action "arises under" the laws of the United States by way of 49 C.F.R. §§ 1043.1, 1043.2. Although this argument was waived by Ore–Ida's failure to cite these sections in its jurisdictional statement, the court nonetheless considers these as well

---

**2.** This court does not suggest that actions of the type addressed in *Ford Motor Co.* or *Milan* might not be jurisdictionally proper. But those types of cases are not before this court. Here, a stranger to the Richmond/Bradley–Zurich/Hartford agreements seeks the proceeds of an insurance policy not yet triggered because there is no final judgment. Nothing in any of Ore–Ida's cases, statutes, or regulations supports an argument that Ore–Ida can base this claim on that jurisdictional basis.

because they can be disposed of on the same grounds as 49 U.S.C. § 10927(a)(3).

Both § 1043.1 and § 1043.2 are of similar effect as § 10927(a)(3). Section 1043.1 states that no common carrier can operate in interstate or foreign commerce until insurance, conditioned on recovery of a final judgment against the carrier, is issued. Section 1043.2 speaks primarily to the dollar amount of coverage necessary for a ICC certificate to issue.

The rationale for holding that § 10927(a)(3) does not create an "arising under" cause of action, fully applies here. The regulations only specify what is required of a carrier for the carrier to be issued a certificate by the Commission. Nowhere in Ore–Ida's complaint do they dispute that fact. Rather it contends that its action is on the policies that the carrier had to obtain. But the ICC's mandated terms cannot be sufficient to create a federal cause of action. Due to the lack of subject matter jurisdiction for the Ore–Ida's case against Hartford, Hartford's motion to dismiss is granted.

## II.

■ Ore–Ida attempts to pursue its suit for loss, caused by Richmond and/or Bradley, directly against Richmond and Bradley's insurers Zurich and Hartford. This is a "direct action" suit against the insurer and is not permitted under Illinois law. Ill.Rev.Stat. ch. 73, ¶ 1000 (1991). Ore–Ida asserts that 49 C.F.R. §§ 1043.1, 1043.2, which required the B.M.C. 32 and B.M.C. 34 endorsements in the Zurich and Hartford policies, allow Ore–Ida to proceed directly against Zurich and Hartford in contravention of Illinois law. Ore–Ida has, in effect, asserted that 49 C.F.R. § 1043 preempts state law on the subject.

■ The source of federal preemption power is Article VI of the United States Constitution. Federal regulations, such as the one presented for review here, may preempt state law. *Fidelity Fed. Sav. & Loan Ass'n de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) (Home Loan Bank Board rule invalidated contrary state law). To determine if

a law or regulation preempts state law, the court must determine the intent of the regulatory body in making the regulation. *English v. General Elec. Co.*, 496 U.S. 72, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990); *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1412 (7th Cir.), *cert. denied*, 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1987). Intent to preempt may manifest itself in several ways. One manifestation is where Congress explicitly states an intention to preempt contrary state law. *National Solid Wastes Mng't Ass'n v. Killian*, 918 F.2d 671, 676–77 (7th Cir.1990). Absent such an indication, Congress's intention to preempt may nonetheless be inferred where there is a pervasive regulatory scheme or to the extent state law is in actual conflict with the federal law or regulation. *Wisconsin Public Intervenor v. Mortier*, —— U.S. ——, 111 S.Ct. 2476, 2482, 115 L.Ed.2d 532 (1991).

■ A court presented with a preemption question should not lightly find an intention to preempt by any law. *National Solid Wastes*, 918 F.2d at 676; *see also California v. ARC Am. Corp.*, 490 U.S. 93, 101, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989) ("Preemption of state law by federal statute or regulation is not favored in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion or that the Congress has unmistakenly so ordained."). In fact, every attempt is made to reconcile the federal and state laws; therefore, preemption is only proper to the extent of an actual, real, and definite conflict between the two. *See Bieneman v. City of Chicago*, 864 F.2d 463, 471 (7th Cir.1988) (holding that common law remedies are not preempted by the Federal Aviation Act). The court must therefore determine whether 49 C.F.R. § 1043 was intended to preempt state law and whether it can be reconciled with state law.

Ore–Ida has omitted from its responses any explicit assertion that 49 C.F.R. § 1043 preempts this state's long-standing direct action prohibition. Rather, it baldly asserts that a direct action is proper in this case and cites two Sixth Circuit cases.

This court's research reveals that there is no evidence that § 1043 was intended to preempt state law. Moreover, Ore–Ida's cases are clearly distinguishable.

The text of § 1043.1 and § 1043.2 is a proper starting point. The sections themselves nowhere state that they are intended to preempt any state law. In fact, the implication of § 1043.1(a)(1), which the court emphasizes, is the opposite:

> No common or contract carrier ... shall engage in interstate or foreign commerce ... until there shall have been filed with and accepted by the Commission ... certificates of insurance ... *conditioned to pay any final judgment recovered against such motor carrier* for bodily injuries to or death of any person resulting from the negligent operation, maintenance or use of motor vehicles in transportation ... or for loss of or damage to property of others....

(emphasis added). Hence, every motor carrier licensed by the Commission need only obtain insurance that pays upon a "final judgment recovered against such motor carrier". The sections only mandate that a carrier obtain insurance to become properly licensed with the ICC. No intent to preempt is recognizable here.

The legislative history verifies this impression. The Commission stated that it adopted these sections, with others, to "eliminate any conflict with the insurance rules of the U.S. Department of Transportation...." 48 Fed.Reg. 51777 and 51778 (1983). In fact, this entire section of the Federal Register is devoted to the explanation of that intended purpose. Not once is preemption mentioned.

Nor can any inference of an intention to preempt be drawn. As mentioned, the sections are very narrow in scope. They concern only the issuance of permits from the ICC. Their effect, even given the broadest of readings, regulates what is required to insure a common carrier. To the extent that state regulations attempt to interfere

with that type of regulation, perhaps that is preempted. But the question presented here is whether Illinois' prohibition of direct action law suits is preempted by this law. The federal regulation speaks of nothing of this kind. Therefore, the answer is no.

The court now turns to the principle cases Ore–Ida asserts mandate preemption here. First the court is asked to revisit *Ford Motor Co. v. Transport Indem. Co.*, 795 F.2d 538 (6th Cir.1986). There, Ford sued a rail transporter's insurer (the defendant Transport Indemnity Company) directly for damages sustained to Ford cars during the transporter's carriage of the cars to Ford dealers. Ore–Ida asserts that this decision stands for the proposition that direct action is appropriate under 49 C.F.R. § 1043.

Ore–Ida's argument misses the mark. Of significant import to that case—and what both parties fail to point out—was that Ford had demanded payment from the transporter, Automobile Transport, Incorporated ("ATI"), prior to demanding payment from the Transport Indemnity. When ATI sought protection from this and its other mounting liabilities under Chapter 11 of the Bankruptcy Code, Ford sued Transport Indemnity directly and eventually obtained a modification of the automatic stay provisions of the Bankruptcy Code to allow ATI to become a party in the Ford–Insurer action. As a result, the insured, ATI, *was* a party to the original action. Furthermore, *Ford Motor Co.* did not even consider whether § 1043 preempted any state's direct action law.

The same conclusion is reached when reviewing *Milan Express Co. v. Western Surety Co.*, 886 F.2d 783 (6th Cir.1989). That case was concerned with whether under 49 U.S.C. § 10927(b) a motor carrier could properly recover from the surety of delinquent brokers. *Milan Express*, 886 F.2d at 789. Obviously not the case here.[3]

Finally, the court notes that at least one other court agrees with this court's inter-

**3.** A third Sixth Circuit case omitted from Ore–Ida's analysis but equally distinguishable is *Cherokee Express Inc. v. Cherokee Express, Inc.*, 924 F.2d 603 (6th Cir.1991). That case was based on yet a different provision of the Interstate Commerce Act but eventually held that jurisdiction was not proper in the federal courts. *Id.* at 609–10. This court was asked to decide whether the various statutes preempt

pretation that preemption is not mandated. In *Hartford Ins. Co. v. Henderson & Son, Inc.*, 258 Ga. 493, 371 S.E.2d 401 (1988), the Georgia Supreme Court was asked to find that both 49 U.S.C. § 10927(a)(3) and 49 C.F.R. § 1043 create a federal right of direct action (and thus preempts state law to the contrary). The court held that "[t]his statute merely affords the ICC the discretionary power to require motor common carriers to be sufficiently secure or insured so as to be able to respond to a shipper's or consignee's claim for damages. Nothing in the language of the statute suggests that Congress intended to authorize a direct action." *Id.* 371 S.E.2d at 402–03. This was so even though Georgia *had* a direct action law. *Id.* at 403 n. 1.

## CONCLUSION

In sum, the court grants both motions. Hartford Fire Insurance Company's motion to dismiss Ore–Ida's amended complaint against them for lack of proper subject matter jurisdiction as to them in this court is granted. Also, Zurich Insurance Company's motion to dismiss Ore–Ida's amended complaint against them because those claims amount to a direct action against the insurer and therefore barred by Illinois law, is granted.

IT IS SO ORDERED.

Lonnie Wickliffe, pro se.

Lisa McCoy, Office of Atty. Gen., Indianapolis, Ind., for respondents.

state law. This question the court answers in the negative.