**F.W. KERR CHEMICAL COMPANY,**
Plaintiff-Appellant,

v.

**CRANDALL ASSOCIATE, INC.,**
Defendant-Appellee.

No. 86–1252.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 26, 1987.

Decided April 6, 1987.

Luis M. Acosta, Krass & Young, Troy, Mich., Allen M. Krass (argued), for plaintiff-appellant.

Edward R. Greenup (argued), Cherf & Greenup, St. Clair Shores, Mich., for defendant-appellee.

Before JONES and GUY, Circuit Judges, and EDWARDS, Senior Circuit Judge.

PER CURIAM.

Plaintiff, Frank W. Kerr Chemical Company (Kerr), appeals pursuant to 28 U.S.C. § 1292(a)(1) (1982) from the district court's denial of its third motion for preliminary injunction. Kerr argues that the district court misapplied Michigan's parol evidence

rule in determining the extent of the contractual relationship between the parties. However, because we find that Kerr failed to file a timely appeal from the proper order of the district court, this court lacks jurisdiction and the appeal is dismissed.

In 1966, Kerr approached Atlas Pharmaceutical Laboratories, Inc. (Atlas), with a proposal that Atlas produce an antiseptic chemical known as "Kerr Triple Dye Umbilical Area Antiseptic" for Kerr to distribute to hospitals. Maynard Crandall, president of Atlas, signed a letter agreement dated February 16, 1966, which described briefly the terms of the business relationship between Atlas and Kerr. Essentially, Atlas agreed to keep secret the formula for the product and further agreed not to manufacture any variations of the original formula other than for Kerr. Atlas and Kerr operated pursuant to this 1966 letter agreement for some time thereafter. Since 1968, however, the formula for Kerr Triple Dye has been printed on the label and has been published in the Federal Register.

In the mid–1970's, the Small Business Administration (SBA) foreclosed on Atlas and liquidated its holdings. Approximately one year after the foreclosure, Kerr again approached Maynard Crandall and inquired whether his new sole proprietorship would produce the Triple Dye Antiseptic for Kerr to distribute. Crandall orally agreed and over the years filled a number of orders for Kerr on a job-per-job basis. The parties vehemently disagree whether Crandall's new company was the successor to Atlas under the 1966 letter agreement, but the district court found tentatively that it was. It is undisputed that no new written contract was entered into detailing any ongoing business relationship. Kerr argues that Crandall was the successor to Atlas and is thereby bound by the 1966 contract. Crandall counters that it was not the successor, that it did not purchase any of Atlas' assets from the SBA, and that it had no ongoing business agreement with Kerr. Rather, Crandall characterizes its relationship with Kerr as a series of one-time manufacturing contracts with varying terms, sealed with handshakes.

Following a routine audit of Crandall's manufacturing procedures by the Food and Drug Administration (FDA), Crandall was instructed that federal regulations required that specific aspects of the relationship between a manufacturer and a distributor of medicinal compounds be memorialized in writing. A two-page agreement, which obviously tracks regulatory language, was drafted and signed by Mr. Crandall and a representative of Kerr on July 21, 1983. The agreement states in its preamble that: "This agreement is made pursuant to the requirements of Section 503(a) of the Federal, Food, Drug, and Cosmetic Act, in order to exempt shipments of drugs from requirements of Section 501(b) and 502(b)(d)(e) and (g) of the Act." In the body of the contract, Crandall, as manufacturer, agrees to process and pack the drug in accordance with the regulations and not to ship the drugs in an adulterated or misbranded state; and Kerr, as purchaser, agrees to process, label and repack the drugs in accordance with the regulations. Paragraph 4 of the agreement states:

> Manufacturer and Purchaser will each keep a duly executed copy of this agreement and this agreement will be continuing and binding on both parties until the receipt by either parity [sic] of written notice of the revocation thereof by the other party. *All previous agreement [sic] to either party by the other are hereby revoked.* This agreement shall become effective when signed by the parties hereto. [Emphasis added.]

The 1983 contract goes on to say that both parties will keep the agreement on hand at their respective offices and available for FDA inspection.

In 1984, Crandall Associate, Inc., began distributing Triple Dye under its own label in bottles deceptively similar to those used by Kerr. Kerr filed suit in federal court claiming violation of 15 U.S.C. § 1125(a) (1982) by virtue of improper copying of Kerr's trade dress. The complaint also made pendent state claims for unfair competition and breach of contract. Kerr moved for a preliminary injunction initially on July 24, 1985, claiming that Crandall's production and distribution of its own Tri-

ple Dye violated their 1966 letter agreement and the federal statute. Crandall defended against this motion by denying that it was a party to or bound by the 1966 agreement and by further denying the alleged trade dress infraction. On August 28, 1985, the district court found that Crandall was the successor to Atlas, but that the 1983 contract revoked the 1966 letter agreement. Therefore, the district court granted the motion in part and preliminarily enjoined Crandall from using deceptive trade dress, but denied the motion insofar as it sought to preliminarily enjoin Crandall from producing and distributing Triple Dye on its own.

In September of 1985, Kerr deposed Maynard Crandall with a view to establishing that the 1983 contract was not intended to be a comprehensive and integrated statement of the parties' business relationship. In this deposition, Crandall admitted that the 1983 contract was drafted for the purposes of meeting the FDA requirements and that the language revoking all prior agreements was inserted pursuant to the regulations. He testified that an FDA inspector told him that as a manufacturer for another distributor, the regulations required that he have this type of written agreement on hand. However, he unequivocally stated that Crandall and Kerr had *no* prior or subsequent agreements to vacate.

On the basis of this deposition, Kerr brought a second motion for preliminary injunction, along with a motion to hold Crandall in contempt for violating the existing trade dress injunction. The district court denied both these motions on November 21, 1985, ruling that the second preliminary injunction motion was moot. Kerr did not file a timely appeal from these rulings.

The third and final motion for preliminary injunction was brought on December 20, 1985. Aside from a brief introductory section explaining why it had the right to make successive motions for preliminary injunction on the basis of newly discovered evidence, the legal arguments in the brief supporting the third motion were essentially the same as the arguments offered in support of the second motion. The district court considered this third motion to be a motion for reconsideration and, in an oral opinion of February 13, 1986, denied it on the grounds that the new evidence—namely the deposition testimony of Mr. Crandall—did not change the fact that the "clear language of the 1983 contract ... abrogates the 1966 agreement." A written order in accordance with this opinion was entered March 5, 1986. Kerr appeals from this written order.

Even where it is not specifically briefed or argued by the parties, this court is obliged to consider *sua sponte* whether appellate jurisdiction is properly invoked. *Ambrose v. Welch*, 729 F.2d 1084, 1085 (6th Cir.1984) (per curiam). Kerr's appeal of the district court's denial of the third motion for preliminary injunction is premised upon 28 U.S.C. § 1292(a)(1), which provides in pertinent part:

(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.

Because the civil rules do not explicitly define the extent of the district judge's discretion in allowing successive pretrial motions or motions for reconsideration of an interlocutory order such as a preliminary injunction, early court decisions formulated a requirement that a successive motion state new facts warranting reconsideration of the prior decision. *See, e.g.,* *SEC v. Graye*, 156 F.Supp. 544 (S.D.N.Y. 1957); *Ball v. Paramount Pictures*, 57 F.Supp. 505 (W.D.Pa.1944). *See also* Fed. R.Civ.P. 60(b). This logic also applies to the interpretation of § 1292(a)(1). Although numerous courts have held that failure to appeal as of right from an order concerning a preliminary injunction does not constitute a waiver of issues in an appeal from the final judgment, *see, e.g.,* *Drayer v. Krasner*, 572 F.2d 348 (2d Cir.),

*cert. denied,* 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978), such a failure to appeal would logically preclude a subsequent interlocutory appeal under § 1292(a)(1) from an unwarranted successive motion. *Cf. Tanner Motor Livery, Ltd. v. Avis, Inc.,* 316 F.2d 804, 810 (9th Cir.1963) (absent changed circumstances, decisions on interlocutory orders should not be reconsidered).

■ In the instant case, Kerr's third motion was obviously successive and while its factual basis arguably had changed from the time of the first motion, nothing had changed since the denial of the second motion. The factual and legal bases offered in support of the second and third motions were indistinguishable. We think that Kerr's right of appeal lay not from the March 5, 1986 order denying the third motion, but rather from the November 21, 1985 order denying as moot the second motion. Therefore, the notice of appeal filed March 13, 1986, was untimely since it was filed more than 30 days from the date of the appealable order. 28 U.S.C. § 2107 (1982); Fed.R.App.P. 4(a)(1).

We do not consider it important that the district court treated the third motion as a motion for reconsideration of the first decision, or that the second motion was dismissed as moot. The right of appeal still arose, as a matter of law, from the decision on the second motion. The issue here is one of appellate jurisdiction and it is the duty of the court of appeals to determine, *sua sponte* if necessary, whether jurisdiction is proper. Mischaracterization by the lower court or by the parties does not affect jurisdictional determinations.

■ We note in passing that this is not a particularly harsh result. Kerr brought three motions for preliminary injunction on an alleged commercial contract in less than five months. As we have already explained, the last two motions were virtually identical. Parties should not be allowed to harass their adversaries and the courts with a barrage of successive motions for extraordinary, preliminary injunctive relief, secure in the knowledge that they can take an interlocutory appeal when it becomes

apparent that they cannot win their war of attrition. The proper pretrial procedure is that when a ruling is made on a motion for preliminary injunction, an aggrieved party must either file a timely interlocutory appeal or request reconsideration on the basis of changed or otherwise unforeseen and unforeseeable circumstances.

Since we determine that appellate jurisdiction does not properly lie from the district court's March 5, 1986 order, we do not reach the substantive issue of parol evidence at this time. The instant appeal is DISMISSED and the matter will return to the district court for further proceedings on the merits.