**CHEROKEE EXPRESS, INCORPORAT-ED, a Michigan corporation, Plaintiff–Appellee,**

**v.**

**CHEROKEE EXPRESS, INCORPORAT-ED, a Pennsylvania corporation; A.R.L. Incorporated, a Pennsylvania corporation, Defendants–Appellants.**

**No. 90–1233.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 27, 1990.

Decided Jan. 24, 1991.

---

Robert L. Mercado; Robert I. Hunter, Eric J. Henning, Dean & Fulkerson, Troy, Rex Eames, John W. Bryant (argued), Neill T. Riddell, Eames, Wilcox, Mastej & Bryant, Detroit, Mich., for plaintiff-appellee.

John D. Mabley (argued), John M. Ketcham, Hill, Lewis, Adams, Goodrich & Tait, Detroit, Mich., for defendants-appellants.

Before NELSON, Circuit Judge; PECK and LIVELY, Senior Circuit Judges.

LIVELY, Senior Circuit Judge.

The defendants, found in contempt by the district court for violating the terms of a preliminary injunction, attempt to avoid the consequences of their conduct by questioning the jurisdiction of the district court in the injunction proceeding. The defendants failed to file a timely appeal from the order granting the preliminary injunction. Although the present appeal is timely insofar as it relates to the order finding the defendants in contempt and awarding attorney fees to the plaintiff, the defendants have not appealed the merits of the contempt order. Instead, they have sought to use this appeal from that order as a springboard for an attack on the injunction that they failed to appeal.

## I.

### A.

The plaintiff, Cherokee Express, Inc., a Michigan corporation, is a motor contract carrier that operates under a certificate issued by the Interstate Commerce Commission (ICC). The defendant, Cherokee Express, Inc., a Pennsylvania corporation, claims that it is a subsidiary of the defendant A.R.L., Inc., a Pennsylvania corporation with an ICC certificate to operate as a motor common carrier. The defendant Cherokee does not hold a certificate from the ICC authorizing any motor carrier operations. It operated as a motor carrier of general commodities, however, claiming the right to do so under the ICC certificate issued to A.R.L.

Section 10921 of the Interstate Commerce Act (the Act), 49 U.S.C. § 10921, requires a person to obtain a certificate of authorization as a condition for providing any transportation or service subject to the jurisdiction of the ICC. The plaintiff sued the defendants under the Act seeking to

enjoin the defendant Cherokee from operating without a certificate. The plaintiff based the claim that is involved in this appeal on 49 U.S.C. § 11708(a), which creates a private right of action on behalf of a person injured by another person's clear violation of various sections of the Act, including § 10921. Section 11708(a) provides:

> § 11708. **Private enforcement: motor carrier and household goods freight forwarder licensing**
>
> (a) If a person provides transportation by motor vehicle or service of a household goods freight forwarder in clear violation of section 10921–10924, 10927, 10930–10932, or 11323 of this title, a person injured by the transportation or service may bring a civil action to enforce any such section. In a civil action under this subsection, trial is in the judicial district in which the person who violated that section operates.

In its complaint, filed in November 1988, the plaintiff alleged that the defendant Cherokee engaged in the transportation of general commodity freight in clear violation of the Act and that this unauthorized operation "has caused and will continue to cause injury to Plaintiff through diversion of traffic that Plaintiff otherwise would handle." The complaint sought a preliminary and permanent injunction against further violations of the Act by the defendants and against the defendant Cherokee's further soliciting of business under the trade name "Cherokee Express" or any imitation thereof.

### B.

The district court held an evidentiary hearing on a motion for preliminary injunction and found that the defendant Cherokee was not subject to the control of A.R.L. Thus, the court determined that the defendant Cherokee was operating without authority from the ICC and in clear violation of § 10921. The court also found that the defendant Cherokee operated in the same market area as the plaintiff, seeking to compete with the plaintiff and actively soliciting business in the geographic area where the plaintiff operates. The defendant Cherokee stipulated that it did not have an ICC certificate and that it actively solicited business from a major customer of the plaintiff, General Motors Corporation, under the trade name "Cherokee Express, Inc."

The district court entered a preliminary injunction as requested by the plaintiff on December 19, 1988, and denied the defendants' motion for reconsideration on March 6, 1989.

On April 3, 1989, almost four months after entry of the preliminary injunction, the defendants filed a notice of appeal from the order "denying Defendants' Emergency Motion to Reconsider or Suspend Injunction entered in this action on March 6, 1989." This court determined that the notice of appeal was not timely and dismissed the appeal, stating in its unpublished order:

> An appeal of right under [28 U.S.C.] § 1292(a)(1) must be taken from the order granting or denying injunctive relief, not from a motion for reconsideration. *F.W. Kerr Chemical Co. v. Crandell Associate, Inc.*, 815 F.2d 426, 428–299 [sic] (6th Cir.1987) (per curiam). Accordingly, the notice of appeal filed April 3, 1989 is untimely because it was filed more than 30 days from the date of the appealable order, and does not confer jurisdiction on this Court. 28 U.S.C. § 2107; Fed.R.App.P. 4(a)(1).

*Cherokee Express, Inc. v. Cherokee Express, Inc.*, 872 F.2d 1024. (6th Cir.1989).

### C.

The plaintiff moved the district court to hold the defendants in contempt for continuing violations of the preliminary injunction. At the contempt hearing the defendants sought to avoid sanctions by asserting that the district court lacked subject matter jurisdiction over the plaintiff's § 11708 claim, and that consequently the preliminary injunction was unlawfully issued. The basis for this argument was the claim that the plaintiff was not a "person injured" by the defendants' unauthorized activities, and that § 11708(a)'s requirement that a private action be brought by a

"person injured" created a limitation on the district court's jurisdiction.

Following an evidentiary hearing the district court issued a memorandum opinion and order in which the court found that the plaintiff had demonstrated sufficient injury to satisfy the contested requirement of § 11708(a). Accordingly, the district court found the defendants in contempt in a memorandum opinion and order dated July 13, 1989, and filed July 14. The court ordered each defendant to pay $2500 in contempt fines and held them responsible for the plaintiff's attorney fees incurred in the action subsequent to issuance of the preliminary injunction. Following determination of the amount and award of attorney fees the defendants filed the present appeal from the contempt judgment and the order awarding attorney fees.

## II.

This appeal does not challenge the merits of the July 13, 1989, judgment of contempt or the amount of the attorney fees awarded by the district court. Rather, the defendants attempt to relitigate the legality of the injunction issued by the district court on December 19, 1988. In their opening brief in this Court the defendants presented a single issue, stated as follows:

> Did the District Court err in finding that Appellee was injured within the meaning of § 11708 of the Interstate Commerce Act, 49 U.S.C. § 11708 (1982 & Supp. IV 1986), thereby giving Appellee standing to bring Count I of its complaint pursuant to that section?

Although the defendants initially characterized the issue as one of "standing," the argument portion of their brief contends that the "person injured" requirement of § 11708(a) is a jurisdictional limitation on the district court's power to entertain a private cause of action for a violation of § 10921.

The plaintiff responded that the injury requirement of § 11708(a) is not jurisdictional. The legislative history discloses, according to the plaintiff, that Congress intended to create only one jurisdictional limitation on the right to bring a private action

under § 11708(a)—that there be a "clear violation" of one or more enumerated sections of the Act. In the alternative, the plaintiff argues that if the "person injured" requirement is jurisdictional, it pled and proved sufficient facts to sustain the district court's jurisdiction.

## III.

### A.

The present appeal is limited to the finding that the defendants are in contempt for violation of the preliminary injunction, the fines imposed for contempt, and the award of the attorney fees. The defendants do not raise any issues, however, with respect to these rulings of the district court. Rather, they are attempting to attack the validity of the underlying injunction collaterally by questioning the jurisdiction of the district court to issue the injunction. As we have noted, this court dismissed an earlier, untimely appeal by the defendants in which they sought to have the preliminary injunction set aside. Under general *res judicata* principles, the judgment imposing the preliminary injunction became final with the dismissal of that untimely appeal, and any later attempt to contest its validity would be barred. Nevertheless, "in order that the doctrine *of res judicata* apply, the court whose judgment is asserted as an adjudication, must have been one of competent jurisdiction." *Ellerd v. Southern Pac. R.R. Co.*, 241 F.2d 541, 545 (7th Cir.1957).

### B.

The general rule is that even though a judgment of contempt and an underlying injunction whose violation is the basis of the contempt finding are related, nevertheless each is a separate judgment and each must be appealed within the time limits prescribed by the rules. An appeal from a finding of contempt does not put in issue the validity of the underlying judgment from which the party has failed to perfect a timely appeal. 9 MOORE'S FEDERAL PRACTICE ¶ 110.13[4] at 150–51. The underlying judgment can be attacked only on

an appeal that properly draws it into question. Such an appeal must be commenced "within 30 days after the date of entry of the judgment or order appealed from." Fed.R.App.P. 4(a)(1). This 30 day time period is mandatory and jurisdictional; unless this requirement is met a court of appeals has no jurisdiction to review a decision on its merits. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 203, 108 S.Ct. 1717, 1722, 100 L.Ed.2d 178 (1988); *Beard v. Carrollton R.R.*, 893 F.2d 117, 120 (6th Cir.1989).

The Supreme Court has held in two cases that a party who violates a "turnover" order of a bankruptcy court and is held in contempt cannot attack the validity of the order in an appeal from the judgment of contempt. *Oriel v. Russell*, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419 (1929); *Maggio v. Zeitz*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948). In *Oriel* the Court stated, "[t]he conclusive effect in a proceeding of this sort of an order of 'turnover' finds its analogy in the inquiry in contempt proceedings for violating an injunction issued by a court of general jurisdiction." 278 U.S. at 365, 49 S.Ct. at 175. The Court supported this statement by citing *Howat v. Kansas*, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550 (1922). In *Howat* the Supreme Court dismissed an appeal from the Supreme Court of Kansas which had upheld a contempt judgment. The party in contempt had attempted to attack the merits of the injunction collaterally in his appeal from the contempt judgment.

This court has applied the same rule in several other situations analogous to this case, both in the context of an award of attorney fees and in the context of contempt. In *Morgan v. Union Metal Mfg. Co.*, 757 F.2d 792 (6th Cir.1985), the plaintiff in a civil rights action failed to appeal dismissal of one of her claims on the merits. Thereafter, the district court found that the plaintiff had pursued the claim in bad faith after particular developments in the proceedings, and awarded costs and attorney fees to the defendant. The plaintiff filed a timely appeal from the order awarding costs and fees, and argued that the district court had erred both in dismissing the claim and in awarding fees and costs. This court held that it had jurisdiction only to review the award of fees and costs. Since the plaintiff had failed to file a timely appeal from the decision on the merits, the court of appeals was "without jurisdiction to entertain his challenge to that decision." *Id.* at 795.

In *United States v. Peter*, 479 F.2d 147 (6th Cir.1973), the district court entered an order enforcing two Internal Revenue Service civil summonses requiring production of specified records. The respondent did not appeal the order of enforcement and subsequently was held in contempt for failing to produce the records. In his appeal from the judgment of contempt, the respondent attacked the validity of the summonses on constitutional grounds, alleging that requiring production of the records would violate the Fifth Amendment prohibition against compelling a party to be a witness against himself. This court concluded that it had no jurisdiction to consider this argument although it had been presented to the district court and rejected. "When appellant failed to appeal from the order of enforcement, the issues before the court in that proceeding became *res judicata.*" *Id.* at 150.

In *Walker v. City of Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967), the Supreme Court held that an injunction by a court of competent jurisdiction must be obeyed even though erroneously issued. In discussing its earlier decision in *Howat v. Kansas*, the *Walker* Court emphasized that the injunction in question was duly issued out of a court of general jurisdiction with equity powers. *Id.* at 315, 87 S.Ct. at 1829. Further, the Court distinguished *In re Green*, 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198 where the Court ordered review of an adjudication of contempt by a state court. The Court pointed out that the person convicted of criminal contempt in *Green* for violating a labor injunction was entitled to a hearing on his claim that the state court that issued the injunction "was *without jurisdiction* to issue the injunction." *Walker*, 388 U.S. at

315 n. 6, 87 S.Ct. at 1829 n. 6 (italics in original).

## IV.

 All of the cases cited in Part III either imply or state specifically that the court issuing the underlying order or injunction had subject matter jurisdiction. The defendants in the present case contended at the show cause hearing that the district court lacked subject matter jurisdiction to issue the preliminary injunction. The district court heard evidence on this issue and found that it did have such jurisdiction. Based on the authorities reviewed in Part III, we conclude that we have jurisdiction over this appeal for the limited purpose of determining whether the district court had subject matter jurisdiction of the § 11708 claim. We conclude further that the district court did have subject matter jurisdiction to issue the preliminary injunction, and affirm the orders from which the appeal is taken.

### A.

 The complaint in this case asserted that the district court had jurisdiction under the Interstate Commerce Act and because of diversity of citizenship. The allegation of jurisdiction under a federal statute required the district court to entertain the suit. "[W]here the complaint, as here, is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions later noted, must entertain the suit." *Bell v. Hood*, 327 U.S. 678, 681–82, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Neither of the noted exceptions applies here. When there is an allegation, as here, that the plaintiff's claim arises under a federal statute, such as the Interstate Commerce Act, the district court has subject matter jurisdiction under 28 U.S.C. § 1331, the catchall federal question provision. *Mt. Healthy City School District Bd. of Educ. v. Doyle*, 429 U.S. 274, 279, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977).

 In deciding whether a claim actually arises under a given statute, a court must determine whether a right created by the statute is "an element, and an essential one, of the plaintiff's cause of action...." *Bush v. State Industries, Inc.*, 599 F.2d 780, 785 (6th Cir.1979), quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). In *Bush* this court considered whether the district court lacked subject matter jurisdiction in light of the fact that the federal statute under which the plaintiff was proceeding did not provide, at the time of the suit, for a private right of action. Upon finding that no implied right of action existed, the district court dismissed the complaint for failure to state a claim. The district court's subject matter jurisdiction was challenged on appeal. We concluded that the district court had jurisdiction to consider the claim, stating, "[T]he fact that a complaint may not state a claim upon which relief can be granted is of no relevance to the question of subject matter jurisdiction." 599 F.2d at 785. Thus, we treated the question of whether the federal statute created a private right of action as an element of the claim, not a question of subject matter jurisdiction. As the Supreme Court made clear in *Bell v. Hood* and *Mt. Healthy*, the question of whether a complaint states a cause of action or claim for relief calls for a decision on the merits, not for a determination of jurisdiction.

We reached a similar conclusion in a case in which jurisdiction was alleged on the basis both of a federal statute and diversity of citizenship. *In re Bendectin Litigation*, 857 F.2d 290 (6th Cir.1988), *cert. denied*, 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989). The only basis for jurisdiction over the claims of non-diverse plaintiffs was 28 U.S.C. § 1331. The complaints of the non-diverse plaintiffs alleged an implied private right of action under the Federal Food, Drug, and Cosmetic Act. This court concluded that the non-diverse plaintiffs had alleged a substantial federal question in their complaints and that their allegations were sufficient to establish federal question jurisdiction. *Id.* at 300.

### B.

The defendants contend that the cases just discussed do not apply because the

plaintiff in this case relied on diversity of citizenship and 49 U.S.C. § 11708 as the basis of the district court's jurisdiction. The record discloses no development of the diversity of citizenship claim. Thus, the defendants argue, the district court had subject matter jurisdiction only if the plaintiff satisfied the requirements of § 11708. Relying on *Walsh v. Ford Motor Co.*, 588 F.Supp. 1513 (D.D.C.1984), the defendants argue that § 11708 is a jurisdictional statute that narrowed the jurisdiction generally possessed by a district court under 28 U.S.C. § 1331, the catchall federal question jurisdictional statute. We disagree.

*Walsh* was an action under the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. § 2310(d) (1988). Magnuson-Moss permits "consumers" who have been "damaged" by violations of the act to sue suppliers and others if they have satisfied special jurisdictional requirements expressly set out in the act:

> (3) No claim shall be cognizable in a suit brought ... [in an appropriate district court of the United States]—
>
> > (A) if the amount in controversy of any individual claim is less than the sum or value of $25;
> >
> > (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or
> >
> > (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

15 U.S.C. § 2310(d)(3) (1988).

The defendant in *Walsh* moved to dismiss the complaint for failure to satisfy the jurisdictional, 100-named plaintiff requirement. The plaintiffs objected that the district court should not make a merits inquiry to determine whether it had jurisdiction. The district court, finding that Congress intended to narrow the general federal question jurisdiction of district courts in enacting Magnuson-Moss, agreed with the defendant and subjected their claim to careful scrutiny for jurisdictional compliance.

*Walsh* is distinguishable from the present case and its reasoning is inapplicable. The quoted provisions of Magnuson-Moss were clearly intended to limit the jurisdiction of district courts. The requirement of § 11708 that the plaintiff be a "person injured" does not purport to be jurisdictional. We believe that the "person injured" requirement does no more than state an essential element for a successful cause of action.

## C.

The original motor carrier provisions of the Interstate Commerce Act did not provide a private right of action. The 1965 amendment added this right in § 11708. As a matter of statutory construction, several courts have held that one provision of the amendment was intended to create a jurisdictional hurdle. That provision is the requirement that there be a "clear violation" of one of the listed sections of the Act. See, e.g., *Baggett Transportation Co. v. Hughes Transportation, Inc.* 393 F.2d 710, 716 (8th Cir.), *cert. denied*, 393 U.S. 936, 89 S.Ct. 297, 21 L.Ed.2d 272 (1968); *City of El Paso v. Autobusses Internationales S. de R.L.*, 526 F.Supp. 5, 10 (W.D.Tex.1980), *aff'd*, 663 F.2d 105 (5th Cir.1981). This conclusion was based largely on a reading of the legislative history of the 1965 amendment. See H.Rep. No. 253, 89th Cong., 1st Sess., (1965), *reprinted in* 1965 U.S.Code Cong. & Ad. News 2923, 2931 ("the words 'clear and patent' are used and are intended as a standard of jurisdiction rather than as a measure of the required burden of proof.").

There is no comparable statement in the legislative history concerning the "person injured" requirement, and none of the cases cited by the defendants holds that this requirement is jurisdictional. It is understandable that the "clear violation" requirement should be treated as jurisdictional. If there is any question about the occurrence of violations of the Act, the ICC, with its expertise, is the proper forum to make this determination. Thus, a district court must defer to the ICC when there is a genuine issue concerning the

existence of one or more violations. When violation of the Act is clear, however, the district court, as a court of equity, is the proper forum to enforce the Act by enjoining further violations. The question of whether the plaintiff has been injured by the violation[s] is not related to the ICC's expertise, but is the sort of question that a district court decides routinely in determining whether a complaint for an injunction states a claim upon which relief can be granted. This question is part of a determination on the merits, quite different from a determination of subject matter jurisdiction. *Bell, Bush, Bendectin,* supra.

## V.

██ The defendants properly characterized the issue in their opening brief in which they stated that the district court erred in finding that the plaintiff had "standing" to bring this action pursuant to § 11708. The defendants do not question the plaintiff's standing under Art. III of the Constitution. Their challenge is based on the statute only. In such a case, standing and subject matter jurisdiction are distinct questions. This principle is illustrated by *Morewitz v. The West of England Shipowners Mut. Protection and Indem. Ass'n.,* 896 F.2d 495 (11th Cir.1990). In *Morewitz* the plaintiff sued under a marine insurance policy, which falls under federal admiralty jurisdiction as set forth in 28 U.S.C. § 1333. The defendant argued that the basis of the suit was an English bankruptcy statute that is not maritime in nature. The district court agreed and dismissed the action for lack of subject matter jurisdiction.

The court of appeals reversed, holding that the allegation of the complaint that the plaintiff sought recovery under a marine protection and indemnity policy was sufficient to confer subject matter jurisdiction. In holding that the English statute only conferred standing to sue, the court stated, "the standing question is separate and distinct from the subject matter question ..." *Id.* at 499. Chief Judge Tjoflat stated in a separate concurring opinion that even if the plaintiff's cause of action de-rived in part from the English statute, this fact would not affect the court's subject matter jurisdiction. He concluded that the right of action depended both upon the English statute and on the insurance contract, and stated that "[t]his action (because it depends in part on the insurance contract) falls under federal admiralty jurisdiction; ..." *Id.* at 501.

The difference between standing and subject matter jurisdiction is clearly illustrated by *Choctaw Mfg. Co. v. United States,* 761 F.2d 609 (11th Cir.1985). In *Choctaw* an unsuccessful bidder for a defense contract sued for a declaration of rights and injunction against the award of the contract to a firm that was not a "small business." Under a Department of Defense order this contract was one of a kind to be set aside for small businesses. The plaintiff predicated subject matter jurisdiction on section 10 of the Administrative Procedure Act. The court of appeals held that section 10 did not serve as an independent source of district court jurisdiction, but that such jurisdiction was provided by 28 U.S.C. § 1331 since the plaintiff's claim "arises under" two federal statutes. *Id.* at 615.

The court then considered the standing issue, both under section 10, which created the cause of action, and "in a constitutional sense." *Id.* The inquiry into standing under section 10 was separate and distinct from any question of the district court's jurisdiction, however, and involved different considerations.

Here, the allegation of the complaint that the plaintiff was seeking injunctive relief under § 11708 of the Interstate Commerce Act was sufficient to confer jurisdiction. The private right of action created by § 11708 is "an essential element" of the plaintiff's cause of action. *Bush,* 599 F.2d at 785. The plaintiff's standing relates not to the court's subject matter jurisdiction; rather, it relates to the question whether the complaint stated a cause of action within that jurisdiction.

## VI.

██ We do not reach the issue of whether the district court correctly con-

cluded that the plaintiff was a person injured by the defendants' violation of the Act. Having determined that the district court had subject matter jurisdiction in the injunction proceeding, our appellate function is at an end, and we lack jurisdiction to inquire further. As noted, the defendants did not bring a valid appeal from the order granting the preliminary injunction. The present appeal raised the single issue of whether the district court had subject matter jurisdiction over this action. We have now held that the district court did have such jurisdiction. Our earlier decision in 872 F.2d 1024 is *res judicata* as to the validity of the injunction. No other issues having been preserved for review, the judgment of the district court is affirmed.