**Peggy L. ADAMS, John P. Aguinaga, Percy Allen, Jr., et al., Plaintiffs–Appellants,**

v.

**CITY OF CHICAGO, Defendant–Appellee.**

Nos. 96–1708, 97–1661.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 30, 1997.

Decided Feb. 4, 1998.

**1152**

Kenneth N. Flaxman (argued), Chicago, IL, for Plaintiff–Appellant.

Lawrence Rosenthal, Patrick Rocks, Darka Papushkewych, Jay M. Kertez, Benna R. Solomon, Susan S. Sher, Shona B. Glink, Ruth F. Masters (argued), Office of the Corporation Counsel, Appeals Division, Chicago, IL, for Defendant–Appellee.

Before CUDAHY, COFFEY, and MANION, Circuit Judges.

MANION, Circuit Judge.

Approximately 280 minority Chicago police officers claim that a test administered to determine promotions to sergeant is racially biased. They appeal the district court's denial of their request for a preliminary injunction which would have prohibited the City from making sergeant promotions pending the outcome of their suit. Because the plaintiffs cannot demonstrate irreparable harm, we affirm.

### I.

The Chicago Police Department (Department) employs close to 10,000 police officers from entry-level to the highest ranks. This huge Department is structured with a typical chain of command where higher-ranking officers supervise those in the ranks below. This case is about sergeants and how they are promoted. The issue is not new. The Department's hiring and promotion practices have been challenged in federal court several times. *See, e.g., Deveraux v. City of Chicago,* 14 F.3d 328 (7th Cir.1994) (challenging lieutenant and sergeant promotions); *Auriemma v. Rice,* 957 F.2d 397 (7th Cir.1992) (demotions alleged to be racially motivated); *United States v. City of Chicago,* 870 F.2d 1256 (1989) (challenging lieutenant promotions); and *Bigby v. City of Chicago,* 766 F.2d 1053 (7th Cir.1985) (same).

The Department is structured to employ over a thousand sergeants. When the plaintiffs sought a preliminary injunction in the district court to prevent further promotions, the Department had approximately 230 sergeant positions to fill. Also, the Department expected to promote 42 sergeants to lieutenant, which would create additional vacancies in the sergeant rank. In any given month retirement, attrition, and death typically caused several additional vacancies. Thus many sergeant slots were vacant. In fact, during the last three weeks of December 1995 and the first week of January 1996, the Department should have staffed 3,444 tours, or shifts of duty, with sergeants, but due to the vacancies 1,600 tours went without sergeants. Even with all of these slots available, the Department has been unable to fill them without a fight over who gets promoted.

In 1993, in an attempt to arrive at a fairer system, the City of Chicago designed and administered a three-part test to determine who gets promoted to sergeant. Part I contained multiple-choice questions covering the law, department procedures, and other regulations sergeants needed to know. Part II (also multiple-choice) tested the administrative functions performed by sergeants, including reviewing reports and determining crime patterns. Candidates who did well on Parts I and II were presumed to know the fundamentals and were then given the opportunity to take the third part of the test, an oral examination based on a written briefing.

Before administering the test, the Department announced that promotions would be based exclusively on the test, and would be made in "rank order," i.e., the highest scorer on the test would be promoted first, the tenth highest tenth, and so on. Parts I and II were administered to 4700 sergeant candidates, and of that number 1,900 candidates qualified for and were given oral examinations. Of the original 4,700 who took the exam, 31.8% were black, 10.8% were Hispanic, and 56.4% were white. But after all three parts were graded, about 88% of those designated to be promoted to sergeant were white and 12% were minority.

The Department administered the test in the first three months of 1994. In August 1994, the Department promoted 114 police officers to sergeant. On September 21, 1994, the plaintiffs sued the Department, claiming violations of the Fourteenth Amendment and 42 U.S.C. §§ 1981 and 1983. They subsequently amended their complaint to allege a violation of Title VII, 42 U.S.C. § 2000e. The plaintiffs subsequently withdrew all of their claims but the Title VII claim. On February 6, 1996, they sought a preliminary injunction against the Department, enjoining it from making permanent promotions during the pendency of this litigation.

The district court held a two-week hearing on the motion for preliminary injunction, and in a written opinion issued on March 25, 1996, the district court refused to enter a preliminary injunction. The plaintiffs filed an interlocutory appeal. However, during the pendency of this appeal, the City of Chicago initiated a Blue Ribbon Task Force to review the Department's promotion practices. By consent of the parties, argument on this appeal was delayed until the Task Force issued its report. In May 1997, the Task Force issued its report recommending that up to 30% of the Department's promotions to sergeant be made on the basis of "merit." This meant that current sergeants and lieutenants would pick 30% of the police officers that would be promoted to sergeant. However, the report also recommends that the current test continue to be used to assure that sergeants given "merit" promotions meet a minimum level of competence. Perhaps that would mean that merit selections would come from the 1,900 that qualified under parts I and II of the current test. In any event, the recommended procedure would be significantly different than the one challenged here.

As the caption indicates, there are two appeals now before this court. Based on the Task Force report, the plaintiffs sought a remand of appeal No. 96–1708 to the district court, to allow the district court to consider the report. We directed the plaintiffs to follow the procedure set forth in Circuit Rule 57.[1] The plaintiffs asked the district court to state whether it was inclined to change its ruling, and the district court, in a written order, explained that it was not. Consequently that order is the subject matter of appeal No. 97–1661; the defendants have filed a motion to dismiss appeal No. 97–1611 on the grounds that it was not an appealable order.

## II.

Initially, we note that because the plaintiffs' original appeal was an appeal from an interlocutory order, Circuit Rule 57 is inapplicable. Circuit Rule 57 applies to motions filed pursuant to "Fed.R. Civ. P. 60(a) or 60(b), Fed.R.Crim.P. 35(b), or any other rule that permits the modification of a final judgment." A denial of a preliminary injunction is not a "final judgment;" appellate jurisdiction is appropriate under 28 U.S.C. § 1292(a)(1), not 28 U.S.C. § 1291. The correct procedure, as recognized by the district court, would be to file a new motion for preliminary injunction. The plaintiffs would be collaterally estopped from challenging the district court's earlier findings, *Avitia v. Metropolitan Club of Chicago, Inc.*, 924 F.2d 689, 690 (7th Cir.1991), but they would be allowed to present new evidence. *Red Star Yeast & Products Co. v. La Budde*, 83 F.2d 394, 396 (7th Cir.1936) ("Denial of an application for a temporary injunction does not prevent another application by the same party in the same suit, if new facts warrant it.").[2]

1. Circuit Rule 57 states:

   Remands for Revision of Judgment
   A party who during the pendency of an appeal has filed a motion under Fed.R.Civ.P. 60(a) or 60(b), Fed.R.Crim.P. 35(b), or any other rule that permits the modification of a final judgment, should request the district court to indicate whether it is inclined to grant the motion. If the district court so indicates, this court will remand the case for the purpose of modifying the judgment. Any party dissatisfied with the

   judgment as modified must file a fresh notice of appeal.

2. Because the findings made in the first denial of the motion for preliminary injunction cannot be collaterally attacked, the first appeal is not mooted by the second appeal, and is in fact the sole vehicle for challenging these findings. *See F.W. Kerr Chemical Co. v. Crandall Assoc., Inc.*, 815 F.2d 426, 428–29 (6th Cir.1987). The findings on the preliminary injunction, however, do not collaterally estop either party from relitigating these issues for purposes of the final judgment.

Thus, when a preliminary injunction has been appealed and a new motion for preliminary injunction is filed, there is no jurisdictional bar to the district court resolving that motion, or an appeal of the district court's resolution. As a practical matter, the subsequent ruling on the preliminary injunction may moot the earlier ruling on the preliminary injunction. Therefore, staying proceedings before the Court of Appeals, or remanding the earlier decision to the district court, may .further the interest of judicial economy. This is the spirit of Circuit Rule 57, which aims at ensuring that the Court of Appeals reviews the last decision of district courts. Unlike under Rule 57, however, a remand is not mandatory. While the plaintiffs failed to file a new motion for preliminary injunction, it probably makes sense in the interest of judicial economy to construe the Circuit Rule 57 procedure followed as the equivalent of the initiation of a new motion for preliminary injunction. Cf. *United States v. Bonansinga*, 855 F.2d 476, 478 (7th Cir. 1988). Although we deny defendant's motion to dismiss Appeal No. 97–1661, this should not be construed as a way to re-route injunctions via a Rule 57 motion. As noted above, we directed the parties to follow the Rule 57 procedure, so we share the responsibility for any confusion resulting from this patchwork process. Henceforth, the Circuit Rule 57 procedure should be used exclusively for final judgments.[3]

Now to the merits: Plaintiffs sought a preliminary injunction prohibiting the Department from making rank order promotions during the pendency of their case. To obtain a preliminary injunction, the movant must establish irreparable harm if the injunction fails to issue, and demonstrate some likelihood of success on the merits. *Abbott Lab. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir.1992). If the district court finds either fact is not present, then the

district court's analysis ends and the preliminary injunction should not be issued. *Id.* When reviewing a denial of a preliminary injunction, "we review the court's findings of facts for clear error, its balancing factors for an abuse of discretion, and its legal conclusions *de novo.*" *Meridian Mut. Ins. Co. v. Meridian Ins. Group Inc.*, 128 F.3d 1111, 1114 (7th Cir.1997).[4]

After a detailed analysis the district court concluded that the plaintiffs had not demonstrated some likelihood of success on the merits. But given the political volatility on the question of "merit" promotions, this is a close question. The district court also found that the plaintiffs would not be irreparably injured by allowing the Department to make promotions while this litigation is pending. Because we agree with this conclusion, and because this alone precludes the issuing of the preliminary injunction, we need not reach the question of the plaintiffs' likelihood of success on the merits.

In most public employment disputes, the district court, after a final hearing, has the authority to order retroactive promotions with back pay, pension benefits, and full seniority rights. *Lasco v. Northern*, 733 F.2d 477, 481 (7th Cir.1984) ("In the context of public employment, the loss of wages, employee benefits, and opportunities for promotion during a period of suspension do not constitute irreparable injury and do not warrant the granting of a preliminary injunction"); *Romasanta v. United Air Lines, Inc.*, 717 F.2d 1140, 1148 (7th Cir.1983) (district court may fashion order with presumption of restoring "rightful place seniority rights"); *Brown v. City of Chicago*, 917 F.Supp. 577, 584 (N.D.Ill.1996). In challenges by police officers regarding promotions, "the court can order their promotion, back pay, pension benefits, and seniority in title." *Id.* The dis-

---

*Gjertsen v. Bd. of Election*, 751 F.2d 199, 202 (7th Cir.1984) ("A preliminary injunction has no preclusive effect—no formal effect at all—on the judge's decision whether to issue a permanent injunction.").

**3.** We do not reach the issue of whether the district court's disinclination to alter its final judgment, pursuant to Circuit Rule 57, is appealable.

**4.** These appeals would be mooted by either a final decision on the merits by the district court, or the Department's decision not to use the list produced by the test for rank order promotions. The Department has informed us by letter that it is uncertain whether it will make any further promotions off the 1994 promotion list. Thus, at this time the controversy would appear to be live.

trict court can even order those who have been promoted due to discrimination demoted. *Doll v. Brown,* 75 F.3d 1200, 1205 (7th Cir.1997). While the district court acknowledged that use of this power can be disruptive, it also found that given the number of current vacancies and the expected attrition of sergeants, no demotions of current sergeants would be needed in order to promote all minorities who should have been made sergeant. In short, "some delay in promotion does not constitute irreparable injury." *Cox v. City of Chicago,* 868 F.2d 217, 223 (7th Cir.1989); *see also Ciechon v. City of Chicago,* 634 F.2d 1055, 1057 (7th Cir.1980) (loss of opportunity for promotion does not constitute irreparable injury).

This case is properly distinguishable from *United States v. City of Chicago,* 870 F.2d 1256 (7th Cir.1989), where we stated that "damages may not be an adequate remedy for persons seeking a career in the Chicago police force who have seen their chances impaired, perhaps permanently, by the discriminatory promotion of minority sergeants...." *Id.* at 1262. *United States v. City of Chicago* addressed a conflict between a federal consent decree and another federal case, which arguably prevented the district court from ordering the plaintiffs be promoted, even though prevailing on the merits. This case involves no limiting consent decree, and the district court will be able to make the plaintiffs whole through use of the district court's remedial power, assuming that the plaintiffs prevail after a final hearing. The district court's finding of no irreparable injury is not clearly erroneous. While finding that the plaintiffs would not suffer irreparable harm, the court also concluded that the City, on the other hand, "demonstrated a great degree of irreparable harm to the Chicago Police Department and the public" in the event he granted a preliminary injunction. There is no need to discuss the obvious imbalance between no harm and great harm, but suffice it to say that the district court did not abuse its discretion by denying the preliminary injunction.

## III.

This case is one of a series of judicial challenges to the promotion policies and procedures in the huge police department of the City of Chicago. Each new case demonstrates that judicial "solutions" are by no means final. At oral argument attorneys for both sides indicated that the City is indeed giving serious consideration to a merit promotion procedure recommended by the appointed Task Force. Any such resolution achieved in a forum that does not resort to federal court is most welcome. For now we conclude that the district court correctly denied the plaintiffs' motion for preliminary injunction.

AFFIRMED.